————o————

BRIDGET MATTHEWS, Respondent, *vs.* THE ST. LOUIS GRAIN ELEVATOR COMPANY, Appellant.

1. *Damages—Death of telegraph employee in removing pole placed by elevator company on its grounds—Removal of grade—Negligence—Common carriers—Diligence required of.*—An elevator company had its office connected with the main lines of a telegraph company, by means of wires supported by a pole placed in the ground to a depth of four or five feet in the elevator lot. But the earth had afterward been graded down, leaving the pole standing not deeper than a foot in the soil. At the request of the elevator company a telegraph employee was sent to remove the pole, and while detaching it from the wires, it fell, and he was killed. It appeared that the pole was originally placed in position under the supervision of deceased; that the grading down of the ground was apparent to the observation of any one; that deceased had been in the habit of visiting the office frequently, and that the elevator company did not in any way employ deceased or control his actions. *Held,* that neither in making the change of grade, nor in failing to notify the telegraph company or the deceased thereof, was the defendant guilty of such negligence as to render it liable in damages for the death; but, *semble,* that deceased was guilty of contributory negligence in attempting, under the circumstances, to climb the pole and remove the wire.
Such a case is not to be confused with a suit against a common carrier—where the law requires the utmost diligence in the company.

*Appeal from St. Louis Circuit Court.*

This case was formerly before this court.   See 50 Mo., 149.

*Slayback & Haeussler,* for Appellant:

If defendant did remove the earth from about the pole, Matthews knowing the fact, and being aware of what he was doing, his own negligence was the immediate cause of his

own misfortune. And the fact of defendant having removed the earth, was a circumstance too remote in the order of causation for plaintiff to recover. (Cuff vs. Newark & N. Y. R. R. Co., 6 Vroom, [N. J.] R. 32 ; Fitzsimmons vs. Inglis, 5 Taunt., 534 ; 4 C. & P., 262 ; 11 C. B. [N. S.] 142 ; 11 Metc., 542 ; 35 N. H. 271 ; 8 Ohio St., 570 ; 14 C. B., 411 ; 20 Penn. St., 171 ; 1 H. & C. 152 ; 26 Ala., 189.)

*Morris & Peabody*, for Respondent.

The court's instruction was wrong. The fact that Matthews knew of the condition of the pole, or might by proper diligence have known of its condition, was not itself proof of negligence in climbing it. Whether under the circumstances he was negligent, was a question to be submitted to the jury. (See S. C., 50 Mo., 149 ; Smith vs. St. Jo., 45 Mo., 449 ; Smith vs. City of Lowell, 6 Allen, 39 ; Reed vs. Inhab. Northfield, 13 Pick., 94 ; Clayards vs. Dettrick, 12 Ad. & El., 439 ; Maloney vs. Met. R. R. Co., 104 Mass., 73 ; Newson vs. N. Y. Cent. R. R. Co., 29 N. Y., 383.)

NAPTON, Judge, delivered the opinion of the court.

This action is one instituted by the widow of John Matthews, to recover the statutory penalty of $5,000, on account of her husband's death, which she claims occurred through the negligence of this defendant.

The case was submitted to a jury on instructions, and the jury found a verdict for the defendant. The only point upon which the case comes here, is, that the instructions were wrong.

The facts seem to be in the main quite clear. The Elevator Company had at their office a connexion with the main lines of the Telegraph Co., by means of a wire called a "guy," and designing to remove their office for a short distance, they requested the telegraph company to send some one to remove the pole, on which the wires were suspended, to a place more convenient for keeping up the connexion with their office. John Matthews, who had been for years

employed in business of this kind by the telegraph company, was sent to attend to this. He went up the pole by the aid of spikes on his feet, and after cutting the wires at a hight of twenty feet, the pole came down, and the forceps which he had in his hand, to cut the wires with, penetrated his skull and killed him instantly.

The pole had originally been placed there under the supervision of Matthews, at a depth of five feet, but the elevator company had graded down the ground around their office three or four feet, and the pole was at the time only sixteen inches in the ground. And the question was, whether this excavation of the ground around the pole made the elevator company responsible for negligence immediately contributing to the death of Matthews, or whether the deceased was guilty of negligence in attempting to climb the pole and cut the wires. The grading down of the ground was apparent to any one; and Matthews was in the habit of visiting the office frequently.

There was some evidence in the examination of plaintiff's first witness, which tended to show that Matthews did not follow instructions in the mode he adopted to remove the telegraph pole without disturbing the transmission of messages. But this point was submitted to the jury on instructions to which no objections are taken.

The instruction given by the court was this: "If the jury believe from the evidence, that John Matthews, the husband of plaintiff, went upon lands in the possession of defendant, for the purpose of removing a telegraph pole, for the accommodation of defendant, by the direction of the agent of the Western Union Tel. Co., given at defendant's request, and so went by permission of defendant; that defendant had previously removed the earth from around the pole so carelessly and negligently as to render the pole dangerous to climb; that in the usual mode of performing the work of removing that pole, Matthews had to climb it; that he did climb the pole in the performance of the work, and proceeded to perform it in a careful and proper manner, and that solely by

reason of the negligence of defendant in the removal of said earth, the pole fell, and thereby John Matthews was killed, the jury will find for the plaintiff, unless they believe from the evidence that Matthews knew of the condition of the pole, or might by proper diligence have known its condition, or otherwise by his negligence directly contributed to produce the fall or his death."

The only objection to the instruction is, that the liability of defendant is placed "solely" on the removal of the earth around the pole, and the jury are told that the plaintiff's right of action depended altogether or solely on her establishing the fact that the sole cause of the death of Matthews was the grading or removal of the earth made by the defendants. And how could this be otherwise under the evidence? It is not pretended that the elevator company had anything whatever to do with Matthews. It is not pretended that he was in their employment, or that they exercised the slightest control over his actions, or that they gave him any directions, or that any of their agents or officers did so, or even that any of them were present at the time of this accident, or interfered in any manner whatever with the removal of the telegraph pole. Matthews was an employee of a telegraph company, and all the defendant did was to request the telegraph company to remove the pole. The only ground upon which there was any semblance of claim against defendant, was the removal of the earth from around the pole.

The instruction speaks of the carelessness and negligence of the defendant in removing the earth. It is difficult to see that the mode or manner of removing the earth had anything to do with the case. It is the mere fact of its removal that is asserted to be negligence. It is clear that the elevator company had a right to remove the earth in front of their office, and adapt it to convenient access by wagons or railroads. At least nothing appears to the contrary. And the real question in regard to the responsibility of the company in this case would be, whether, when they invited the telegraph company to have the telegraph pole removed, they

were bound to apprise this last company or its agent of the change of grade which had been made by them six months before the request. The change was open to the observation of every one, and no specific directions were given by the defendant, either to the telegraph company or its servants, as to the mode of removal which they asked. The defendant did hot assume to know anything or to advise anything on this point. The employees of the telegraph company were presumed to know what was the mode of removing a telegraph pole; and whether it was safe to climb one situated as this one was, with only sixteen inches of dirt about it, was a matter upon which the judgment or opinion of the elevator company was not asked.

The propriety of an instruction must be determined in reference to the facts of the case, or rather the evidence in regard to the facts. We are unable to see how this instruction could operate unfavorably to the plaintiff under the facts agreed on by both parties.

An instruction was asked by plaintiff which was refused, and this is another ground of complaint here. The instruction is this: "The jury are instructed that although the deceased may have been guilty of misconduct or failed to exercise ordinary care and prudence which may have contributed remotely to the death of deceased, yet if the employees of the St. Louis Grain Elevator Co., or either of them, were guilty of negligence which was the immediate cause of the death, and with the exercise of prudence by said employees or either of them, said injury and death might have been prevented, the defendant is liable in this suit." This instruction is copied from one approved by the court in the case of Morrissey vs. Wiggins Ferry Co. (43 Mo., 380.)

The cases are totally different, not merely because the suit of Morrissey was against a common carrier, where the utmost diligence is required, but because there were facts in the case which might have thrown the responsibility on the boat for failing to exercise due diligence in protecting a passenger from her own negligence. There was no evidence to justify

such an instruction in this case, although it was undoubtedly proper in the Morrissey case. It is clear that neither the defendant in this case, or its agent, had the slightest agency in the unfortunate disaster at the time it occurred, and that no diligence on their part and no interference could have prevented it, seeing that they had no knowledge in regard to it. The defendant simply wrote a letter to the telegraph company to change the location of a telegraph pole, or sent a dispatch to that effect, and from that time until the accident, no way interfered. Instructions sanctioned by this court under a very different state of facts, are not necessarily to be given in cases where the facts are unlike.

The verdict and judgment were clearly right on this evidence, and under the instructions.

The judgment of the General Term will therefore be reversed, and that of the Special Term be affirmed; the other judges concur.