ELIJAH BRINK, Respondent *v.* THE KANSAS CITY, ST. JOSEPH AND COUNCIL BLUFFS RAILWAY COMPANY, Appellant.

March 30, 1885.

1. DAMAGES—SURFACE WATER—LAW GOVERNING IT—ABBOTT v. RAILROAD DISTINGUISHED FROM THIS CASE—DEMURRER TO EVIDENCE.

—In the case of *Abbott* v. *Railroad Co.* (not yet reported) the
Supreme Court of this State holds : That if the water expelled
from the banks of the natural water-course was owing to the inca-
pacity of the channel to contain the volume of water flowing on
that occasion in the stream, regardless of the construction of the
bridge, such water, after it left the natural channel and flowed
over the bottom lands along the railroad track, was, in strictness,
surface water ; so that, in determining the question of negligence
in the construction of the road-bed, the waters, *as to that*, must
be treated as surface water. But in the case at bar, there is no
issue made as to the track embankment, but the principal ques-
tion is whether or not the waters doing the damage complained
of, came from the two creeks, and whether or not the overflow
was occasioned by the negligent act of defendant in *obstructing*
the natural water-flow of the streams. In the *latter case* the de-
fendant would be liable, and the charge of so obstructing is the
main ground of complaint in this case. And upon a careful
review of the evidence this court holds that the instruction asked
by defendant in the nature of a *demurrer* to the evidence, was
properly refused, and that there was sufficient evidence to war-
rant the trial judge in sending the case to the jury.

2. INSTRUCTIONS—MUST BE CONSIDERED WITH REFERENCE TO THE QUES-
TION ACTUALLY AT ISSUE AND ON TRIAL IN THE GIVEN CASE.—It is
always important in the consideration of instructions to keep in
mind the questions actually at issue and on trial in the given case.
A proposition of law, advanced in a single instruction, abstractly
considered, may be legally inaccurate, yet taken in the combina-
tion, and with reference to what the jury must have understood
to be the real import of the declaration, it may be neither vicious
nor misleading.—*Mathews* v. *St. L. Gr. El. Co.*, 59 Mo. 478. The
statute, while giving defendant the right to construct its bridge
over this water course, declares that " the Company shall restore
the stream to its former state,or to such state as not to unnecessa-
rily to have impaired its usefulness." Had the court been directing
the jury in an issue as to the manner of *constructing* the bridge
the statutory language would have been preferable. But *as ap-
plied to this case*, and in reference to the thought conveyed
necessarily to the mind of the jury, the terms "unreasonable
obstructions" could not have misled the jury, and therefore it is
not reversible error.—Sect. 3795, Rev. Stat. ; *Morris* v. *R. R.*
79 Mo. 368 ; *Spurling* v. *Conway*, 75 Mo. 570; *Noffsinger* v. *Bailey*,
72 Mo. 210 ; *State* v. *Hopper*, 71 Mo. 425.

3. TORTS—RULES GOVERNING IN ACTIONS FOR—REPARATION FOR LOSSES
REASONABLY LIKELY TO ENSUE.—The rule in actions of torts is that
the tort-feasor must make reparation for such losses consequential
on his wrongful act, as might reasonably have been expected
under the particular circumstances to ensue ; "such as according
to the common experience and the usual course of events might

reasonably be anticipated." "The injury must proceed from and be caused by the wrongful act of the defendant, but the causation is not to be tested metaphysically or by any occult principles of science, but rather as persons of ordinary intelligence apprehend cause and effect, and see one fact proceed from another."—Sutherland on Damages, 21. There must, of course, be some nearness in the connection between the injury and the negligent act—that it must be the primary cause; and where there is a concurrence of some other immediate agency in producing the injury, that event must have been the effect of the act complained of, or within the range of probable occurrence to a person of ordinary circumspection while engaged in the act.—Sutherland on Damages, 57; *Pittsburg* v. *Grier*, 22 Pa. St. 66; *Scott* v. *Hunter*, 46 Pa. St. 192; *George* v. *Fisk*, 32 N. H. 32; *Dickinson* v. *Boyle*, 17 Pick 78; *Greille* v. *Swan*, 10 John 381.

4. DAMAGES—ALLOWANCE OF INTEREST.—Usually in such cases as the one here, interest is not allowable as part of the damages,—*De-Steigir* v. *Railroad*, 73 Mo. 33,—but it is quite palpable from the amount of the verdict in this case, that the jury did not award any interest, as the amount of the verdict is far below the lowest estimate of the amount of damages done the plaintiff by any witness—*Wade* v. *R. R.*, 78 Mo. 366; *Morris* v. *R. R. Co.* 79 Mo. 370,—but this doctrine is not to be extended. But to obviate any complaint the plaintiff has entered a remittitur in this court of such interest as the jury may have awarded.

APPEAL from Jackson Circuit Court, HON. F. M. BLACK, Judge.

*Affirmed, less the reduction conceded by the remitittur.*

Statement of case by the court:

This is an action to recover damages against the defendant, a railroad corporation, for obstructing natural water courses, whereby the plaintiff's lands were flooded with water, and his crops destroyed. The material averments of the petition are: That the plaintiff in June, 1879, was the owner of a farm in Platte county, through which defendant's road passed; that on the west of said land, crossed by said road runs a creek called Milton creek, and on the east of the land runs another creek known as Rush creek, both of said streams running due south, the beds of which were always sufficient to drain away all the water flowing into it from any cause whatever before the same were obstructed, as hereafter mentioned, car-

rying off the same without damage to the adjacent land or crop.

That said defendant built bridges over the two streams, the one over Rush creek, in section 33, known as bridge No. 18, and the one over Milton creek, known as bridge No. 19, in section 32, both in township No. 34, of range No. 51; that the said bridges were so carelessly and negligently built, and the beds of said streams were so obstructed by piling of logs driven in the channel at Rush creek and sawed off between the water and the bridge, and by other obstructions, and at Milton creek by filling the bed of the stream with piling and other obstructions, and otherwise so carelessly and negligently constructing the said two bridges, and so recklessly obstructing the beds of the said creeks as to prevent the free run of the water of the two creeks, as had always been the case before.

That on the 27th day of June last, during and after a heavy rain, the water at the said two creeks was dammed up at the said two bridges, Nos. 18 and 19, and overflowed plaintiff's farm land as aforesaid with the surplus water being diverted from its natural course, caused as aforesaid by the negligence and carelessness of defendant in carelessly and negligently building said bridges, and by the obstructions placed in said stream aforesaid in the building of the same, and that said waters overflowing plaintiff's land, destroyed large quantities of wheat, corn, and other grain; destroyed fences and otherwise greatly damaged plaintiff in a large sum, to-wit: in the sum of $1,500, for which he prays judgment.

The answer contained a general denial; and then further pleaded, that the waters doing the alleged injury were surface water, falling on high lands east of the plaintiff's farm and flowing down over the surface of the ground on to plaintiff's field; that the natural streams of said creeks were not adequate to the office of carrying off the water that flowed into them on the occasion in question, which was a freshet of unusual and extraordi-

nary character; that the injury to the plaintiff resulted from the incapacity of the banks of said streams to contain the amount of water collected in them from the highlands, and not from any negligence of defendant contributing directly thereto. The answer further alleged that plaintiff's land is swampy, and annually subject to overflow from the waters of the Platte and Missouri rivers near by, and that the injury to plaintiff's land south of the railroad track was occasioned by water backing from Platte river; and that defendant was guilty of negligence in and about Milton creek bridge which caused the water to flow back there from and submerge his land.

The reply tendered the general issue as to the new matter contained in the answer.

The evidence showed that Milton creek and Rush creek flowed from north to south. The former was in section 32, the latter in section 33. Rush creek had its rise about eight or ten miles in the hills, and was a stream of considerable size. Milton creek was a much smaller stream, and with but little water in it in ordinary seasons. Rush creek at the railroad bridge was from fifty to sixty feet wide, and its channel seven or eight feet deep. Milton creek bridge was about twenty-five feet span, and the depth of channel about four or five feet. Between the two bridges the surface of the ground is flat, and the track of the road is thrown up along there in places four or five feet high. The accumulated waters, on the occasion in question, coming from whatever direction they did, broke ultimately through this railroad embankment, and flooded the fields on the south side, destroying plaintiff's crops.

The evidence, pertinent to the question involved in this appeal, is set out in the opinion of the court.

The court of its own motion gave the following declarations of law:

No. 1. The court instructs the jury as follows: The defendant had the right to construct its road over and along the land mentioned in the pleading, and over and across the two creeks in question, to-wit: Milton creek

and Rush creek, and to that end might lawfully construct and maintain bridges across said creeks, and each of them, but it was its duty to so construct and maintain said bridges as to permit the water and drift that are accustomed to flow down said streams, and each of them, both at low and ordinary high stages of water, to pass through freely and without unreasonable obstruction. It is not its duty, nor is it required to so construct or maintain the bridges as to permit the water and drift to pass through without obstruction at times of unexpected and extraordinary floods or freshets.

No. 2. If you find from all the evidence in this case that the defendant repaired or reconstructed, or rebuilt said bridges over said streams, and in doing this drove piles in the said streams for supports to said bridges, and suffered the same to remain, or if at said Rush creek said bridge was reconstructed and the piles placed in the stream were left partly above the bed of the creek, and that by reason of said piles or supports being so left, and allowed to remain in said stream under said bridges, the waters of said creek became dammed up, and were diverted from their natural or accustomed channel or course of flowing, and caused them to flow in a new direction along the railroad track of defendant, and that thereby, and by reason thereof, the whole or any considerable portion of the waters of said creeks, so turned and diverted, flowed upon and over the lands of the plaintiff described in the petition, about the date alleged, and by reason thereof plaintiff's crops mentioned in the petition were damaged, then you should find for the plaintiff, unless you also further find that said waters were thus turned and diverted by reason of an unexpected and extraordinary freshet or flood, and not by reason of any want of capacity of said bridges to meet the demands of ordinary stages of high water. If you find for the plaintiff, you will assess his damages at such an amount as would be a fair equivalent and compensation for the damage done to his crops and fences by the waters so diverted and caused to flow upon plaintiff's lands and crops. If the same

were destroyed, or wholly lost, the damage will be the fair value of the same on the ground. You may add to such amount interest at the rate of 6 per cent. per annum from the date of the commencement of this suit.

No. 3. If upon the other hand you find from all the evidence in the case, that said bridges were repaired, reconstructed, or supported by the pilings, or if the unused pilings were not cut with the surface of the bed of the creek; still, if from all the evidence you are satisfied that said bridges, at the date the damages are claimed to have been done to plaintiff's crops, were of sufficient capacity, and sufficiently free from obstructions placed there by defendant to allow the waters of said stream to pass without any material obstruction at all times of low and ordinary high stages of water; that at the time of the alleged injuries to the plaintiff's crops there was an unexpected and extraordinary freshet or flood, and because of this, said bridges were unable and insufficient to allow said waters to pass through with their drift and they became dammed up and flowed upon the plaintiff, then he is without remedy, and you must find for defendant.

No. 4. If you find from all the evidence that there was an extraordinary rainstorm, flood, or freshet, and you also find that defendant placed and suffered to remain in these streams or either of them, used or unused piles, and that the piles so placed or suffered to remain therein materially obstructed the flow of the water of these streams at ordinary high stages of water; and that both of these causes, to-wit: the extraordinary flood or freshet and the obstructions of the character aforesaid, at the same time combined and directly caused the waters to flow in a new channel and along the line of defendant's road, and thence into plaintiff's fields, and caused the injury and damage complained of, then the plaintiff is entitled to recover, but in that event he can only be allowed such damages as were brought about by reason of such obstructions under said bridges as would not have occurred had said bridges been sufficient, and only suffi-

cient and adequate to allow the water to pass reasonably free in ordinary high stages of water.

No. 5. If you find from the evidence that plaintiff, or plaintiff and another, placed a watergate at the Milton creek bridge, and so constructed or hung the same that it prevented the free flow of water and drift, and this to any extent obstructed and caused the water to flow along the line of defendant's road and thence onto the plaintiff's land and crops, and thereby produced any of the injury or damages complained of, then all such damage must be excluded should you find for plaintiff.

No. 6. You are the exclusive judges of the credibility of the witnesses, both on the one side and on the other, and of the weight to be given to their testimony.

The defendant asked and the court refused the following instructions:

No. 2. If the jury believe from the evidence that defendant, in constructing or repairing its bridges over Rush creek and Milton branch, obstructed the channel of said stream, yet if they further find from the evidence that the defendant left sufficient space for the passage of the waters of such streams in all ordinary storms, they will find for the defendant.

No. 3. If the jury find from the evidence that the rainstorm mentioned in proof was an extraordinary one, and that the damage to plaintiff's crops was due to the fact that the channels or beds of the streams mentioned in proof, were too small to carry the waters of the flood mentioned, your verdict must be for the defendant.

No. 4. If the jury believe from the evidence that the storm by which plaintiff's land was flooded, was of such extraordinary character that the land of the plaintiff would have been overflowed if the obstructions placed by the defendant at the bridges mentioned in proof, had been removed before said storm, they will find for defendant.

No. 5. If the jury believe from the evidence that the beds or channels of Rush creek and Milton branch were not of sufficient size to contain and carry off the water

falling on and flowing into the streams at the time of the injury complained of, had the obstructions placed by the defendant not been therein, they will find for the defendant.

No. 6. If the jury believe from the evidence that the damages complained of to the crops of plaintiff were caused by the water from Rush creek and Milton branch united, and breaking through the road bed of defendant, and that such water from Milton branch had been diverted from its channel, being obstructed by piles therein placed by defendant and also by watergate fastened to such bridge, and that such watergate was placed there by plaintiff and another, they will find for defendant; though they may believe from the evidence that the obstruction caused by the piles was greater than that caused by such watergate.

No. 7. If the jury find from the evidence that the rainstorm in proof was an extraordinary one, and that the damage to plaintiff's crops was due to the fact that the channels or beds of said streams mentioned in proof, were too small to carry the water flowing down to such channels, your verdict must be for defendant.

No. 8. If the jury find from the evidence that the damage to plaintiff happened in consequence of the union of the waters of Rush and Milton creeks, and that the water of Milton creek alone would not have broke through the track and flooded his crops, then the court instructs them that if the waters of Rush creek were not caused to leave its banks by obstructions in said creek, but by reason of the banks being too small to carry the water off said stream, your verdict must be for defendant.

No. 9. The court instructs the jury that there is no evidence that there was any negligence whatever in the original construction of the bridges mentioned in evidence.

No. 10. If the jury believe from the evidence that the rainstorm in proof was of such an extraordinary and overwhelming character as by its own force and independently of the alleged obstruction of the creek mentioned by the defendant to produce the damage com-

plained of, defendant is not liable for such damages, though they may believe from the evidence that defendant was guilty of some negligence in not removing obstructions by it placed in the stream mentioned.

The court gave to the jury, at defendant's request, the following instructions, viz:

No. 1. It devolves on the plaintiff to show by a preponderance of the evidence to the satisfaction of the jury that the damages complained of were caused by obstructions placed by defendant in the bridge built by it over the streams mentioned in proof.

No. 10. The court instructs the jury that if they find from the evidence that the storm in question was so extraordinary and severe and the water falling therein so great that you believe from the evidence that the plaintiff's crops would have been flooded and injured to the same extent had the railroad and railroad bridges never been built, your verdict must be for the defendant.

The court also modified and gave the jury instruction numbered 2 asked by defendant in the following form:

No. 2. If the jury believe from the evidence that defendant, in constructing or repairing its bridges over Rush creek and Milton branch, to some extent obstructed the channels of said streams, yet if they further find from the evidence that the defendant left sufficient space for the passage of the waters and drifts of such streams in all ordinary high stages of water they will find for the defendant.

The jury returned a verdict for plaintiff, assessing his damages at the sum of $162.50. After an ineffectual motion for new trial, the defendant duly prosecuted his appeal.

STRONG & MOSMAN and J. P. STRONG, for the appellant.

I. The court erred in the *first* instruction asked by plaintiff. By it the test of defendant's liability was made to depend on the *reasonableness* or unreasonableness of the obstruction instead of the *necessity*, or want of necessity.—Section 765, Revised Statutes; *Abbott*

*v. R. R. Co.,* Dec. 15, 1884, not yet reported. By it the issues were changed. The action was brought to recover on account of the negligence of defendant, which, as is alleged, occasioned harm to plaintiff. But a recovery may be had for an unreasonable obstruction.— *Price* v. *R. R. Co.,* 72 Mo. 414; *Abbott* v. *R. R., supra; Camp* v. *Heelan,* 43 Mo. 592; *Moffat* v. *Conklin,* 35 Mo. 457; *Benson* v. *R. R. Co.,* 78 Mo. 504.

II. The giving of the *second* instruction on plaintiff's motion was erroneous. It declared as matter of law that either placing piling in the bed of a stream and suffering them to remain there, or leaving piling in a stream partially above the bottom of its bed, entitles the plaintiff to recover, regardless of whether the same was negligent or careless; and regardless of whether the same was necessary in constructing or maintaining defendant's road in a careful, skillful, and workmanlike manner or not. The defendant was authorized to construct and maintain a railroad. An act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences follow.—*Radcliff Ex. Co.* v. *Mayor,* 4 N. Y. 200; *Morgan* v. *Cox,* 22 Mo. 373; *Randle* v. *R. R.,* 65 Mo. 325; *Clark* v. *R. R.,* 36 Mo. 202; *Ballinger* v. *R. R.,* 23 N. Y. 47; *Boothy* v. *R. R. Co.,* 51 Me. 318; *Imler* v. *Springfield,* 55 Mo. 119; *Swenson* v. *Lexington,* 69 Mo. 157; *McCormick* v. *R'w'y Co.,* 57 Mo. 439. Said instruction declared that defendant was bound, *absolutely,* in the construction of its bridges to afford a capacity sufficient to meet the demand of ordinary stages of high water, regardless of the question of care and skill in respect to their construction. This would depend on whether there was a necessity to "impair" their "usefulness".— Section 765, Revised Statutes; *Terre Haute Co.* v. *McKenley,* 33 Ind. 282. Again, it allowed the recovery of intent.—*DeSteiger* v. *R. R. Co.,* 73 Mo. 33.

III. The Court erred in giving to the jury instruction numbered *three,* because it made the defense of "an extraordinary storm" depend on the capacity of the bridges

and their freedom from obstruction.—*Railroad* v. *Reeves*, 10 Wall. (U. S.) 176; *Morrison* v. *Davis*, 20 Pa. St. 171.

IV. The court erred in giving *fourth* instruction. The consequences here could not have been reasonably foreseen by defendant.—*Hoag* v. *R. R. Co.*, 85 Pa. St. 293; *R. R. Co.* v. *Kellogg*, 94 U. S. 475; *Tuetin* v. *Harley*, 98 Mass. 211.

V. Plaintiff bases recovery upon defendant's alleged negligence. There are no presumptions in his favor. To authorize a verdict, the damages must be the natural, probable, and proximate result of defendant's negligence. —*R. R. Co.* v. *Kellogg*, 94 U. S. 475; *Hoadly* v. *Transp'n & Co.*, 115 Mass. 304; *Morrison* v. *Davis*, 20 Pa. St. 171; *R. R.* v. *Berney*, 71 Ill. 391; *Hoag* v. *R. R.*, 85 Pa. St. 298; *R. R.* v. *Burrows*, 33 Mich. 14; *Bigelow* v. *Reed*, 57 Me. 325.

VI. The instruction in the nature of a demurrer to the evidence should have been given. The proof shows conclusively that the damage was the result of an extraordinary storm, and defendant is not liable.—*R. R.* v. *Reeves*, 10 Wall. 176; *Morrison* v. *Davis*, 20 Pa. St. 174; *Sykes* v. *Sheldon*, 58 Iowa, 744; *Callahan* v. *Warne*, 40 Mo. 131.

Defendant's 3d, 4th, 5th, 6th, 7th, 8th, 9th, and 10th instructions should have been given. There was evidence tending to support them and it was error to refuse to submit them to the jury, especially the 6th, which declared that the law would not apportion the damages between wrong-doers.—*Larkin* v. *Taylor*, 5 Kansas 445; *Schaab* v. *Woodburn Co.*, 56 Mo. 173. So as to 8th instruction. Defendant's 10th instruction should have been given. It was rendered necessary by plaintiff's 4th instruction.—*Langdon* v. *Ry. Co.*, 48 Iowa 437.

A. COMINGO and JAS. F. MISTER, for the respondent.

I. As to the *verdict* there is no just ground of complaint, and if there were, no legal ground is suggested for setting it aside. Ths verdict is "against the evidence" in the smallness of damages given to plaintiff, but defendant does not complain of this, and plaintiff

submits to it.  And it is not against the law or the in-
structions of the court, but in accordance with both,
except in the measure of damages, which was apparently
disregarded to the prejudice of plaintiff, but of which
defendant does not and cannot complain.

II. With regard to the "erring" of the court as to the
refusing and modifying of defendant's instructions and
giving others of its own motion, and as to its overruling
demurrer to evidence, we are willing to submit it action
without comment, further than to say that the law was
given for defendant more favorably than it can fairly
claim for itself—*Munkers* v. *This Defendant*, 72 Mo.
574—and if the court had sustained the demurrer to
evidence it would have been gross error.

III. The main question for the jury to determine was,
whether defendant in the construction of its bridges and
in the strengthening of them by the driving of piles in
the bed of the creek and leaving them to remain in part
(after the replacing of the bridges by new ones) so ob-
structed the channel of the creek as to dam up the water
(by the accumulation of drift) and diverting it from its
usual and natural channel and causing it to flow in a new
direction, whereby some of the water so turned and di-
verted was made to flow upon plaintiff's land to his injury.
They (the jury) have so found by their verdict, and under
the law, by the repeated rulings of the Supreme Court
of this state where the defendant was a party, it is liable
for the damages.—*Munkers* v. *K. C., St. J. & C. B. R.
R. Co.*, 72 Mo. 514; *Shane* v. *Same*, 72 Mo. 237; *McCor-
mick* v. *Same*, 70 Mo. 359; *Abbott* v. *Same* (unreported),
October Term, 1884.   *Note.*—The case of Abbott, last
named, is not applicable or relevant to this case, *so far
as it refers to surface water*.

IV. A water-course is a stream or brook having a
definite channel for the conveyance of water.  It may be
made up, more or less, from surface water from rains,
but after it enters into a channel and commences to flow
in its natural banks, it is no longer to be considered sur-
face water.  The water must usually flow in a definite

bed or channel, though it need not flow continually the year round.—*Munkers* v. *This Defendant*, 72 Mo. 514; *Rose* v. *St. Charles*, 49 Mo. 509; Dill, Mun. Corp., 3d. ed., sec. 1038 and note; 3 Kent's Com. 439; 2d Wash. Real Prop., 64, p. 40; *Mills* v. *Brooklyn*, 32 N. Y. 489.

V. The *measure of damages* is the market value of the crops and fences destroyed, or rent of ground and value of fence.—2 Dill, Mun. Corp. 3d ed., sec. 1038 and note. The instruction as to interest did no harm as it was not even considered by the jury. It is not, *in principle*, in .conflict with former decisions, as: 63 Mo. 99 and 367; 64 Mo. 542, and *DeSteigir* v. *R. R.*, 73 Mo. 33.

Opinion by PHILIPS, P. J.

I. We are urged by appellant, in an argument manifesting much zeal and ability, to reverse this case because there was not sufficient evidence to support the verdict. This has imposed upon the court a most onerous task, of examining minutely and patiently a most unusual mass of evidence, in such a case, which labor we have performed as best we could.

We will observe at the outset of this investigation, that the water in question cannot be regarded as surface water. The case is not like that of *Abbott* v. *Railroad*, recently decided by the Supreme Court. In that case the petition tendered two issues. First, the improper construction of the bridge, which caused the water of the natural water-course to overflow the banks of the stream; and, second, the negligence of the railroad company in constructing its track over the bottom lands, so as to divert the water coming against it whereby it was precipitated upon the lands of the plaintiff. The court holds in that case, that if the water expelled from the banks of the natural water course, was owing to the incapacity of the channel to contain the volume of water flowing on that occasion in the stream, regardless of the construction of the bridge, such water, after it left the natural channel and flowed over the bottom lands along the railroad track, was, in strictness, surface water. So that in determining the question of negligence in the

construction of the road bed, the waters as to that must be treated as surface water.

But in the case at bar there is no issue made as to the manner of the construction of the track embankments. But the principal and controlling question in this case is, whether or not the waters doing the damage complained of came from the two creeks, and whether or not the overflow was occasioned by the negligent act of the defendant in obstructing the natural waterflow of the streams.    In the latter case the defendant would be liable.

The negligence charged against the defendant in the petition is, first, that it had so carelessly and negligently built and constructed its bridges over the creeks, and, second, that it had so obstructed their beds, or channels, by pilings or logs, driven therein and sawed off between the water and the bridge, and by other obstructions, as to prevent the free run of the waters of said creeks as theretofore.

It will not, I presume, be controverted, that proof of either of the alleged grounds of negligence would be sufficient to support the action.    As to the first ground, the negligent construction of the bridges, we confess there was but little evidence, if any, to support that issue.    There were some bents put in each of the bridges, and some supports standing in the channel, which seem to have caught drift, but whether these were essential and necessary in the construction of the bridge, was not so put to the jury as to have warranted a verdict on that branch of the petition.

But, on reading the record, it is manifest that the real issue on trial, to which the evidence was mainly directed, and the instructions given, as well as those refused, placed before the jury for their consideration, was whether the pilings left in the bed of the creek at Rush creek were the occasion of the mischief complained of.    The evidence, offered by plaintiff, tended to prove that at the bridge over Rush creek the defendant had, previous to this flood, in the construction or reconstruction

of the bridge, placed in the bed of the stream posts or logs, designated as pilings. They appear to have been employed as temporary supports. After they had per-formed their office the defendant cut them off, to the number of 22. The evidence tended to show that these stumps were cut off from two to three feet above the ordinary surface of the water. They extended across the bed of the creek, and up the sides of the banks. The distance from the top of these pilings to the chord. or stringer of the bridge was from five to six and three-twelfths feet. On or up the sides of the banks, these pilings were higher than in the bed of the stream.

The contention of the plaintiff is, that at this bridge, when the water rose in the creek, the effect of these pilings was to catch drift of every kind floating down the current, and thus each piece of drift so lodged would form a lodgment for its successive floater, until as the stream continued to rise this accumulation of drift increased, choking up the natural channel, or outlet, of the water under the bridge, forming back water. So that the inevitable result would be, the escape of the water over the banks of the creek. Whether such was the fact was peculiarly a question for the jury.

The plaintiff's evidence tended to show that, on the occasion of the rainfall in question, the drift caught and lodged against and about this bridge, in a manner and to an extent not observed prior to the placing of these pilings in the channel. This drift accumulated until it extended back above the bridge seventy-five or eighty yards. The natural tendency of this obstruction would be to prevent the escape of water through the channel under the bridge, and to dam and force it back, so it must rise on the banks and ultimately break over.

The evidence further showed that there was a county bridge over this creek about 300 yards above the railroad bridge, and at a point 40 yards below this county bridge the water escaped from the banks of the creek and run out on to the fields, as well as from and about the

bridge. Whether the drift and back water from the railroad bridge had any influence, and if so to what extent, in forcing this vent, was a question of fact for the jury.

There are some facts, appearing from the plaintiff's evidence, which to my mind might not unreasonably have warranted the jury in drawing the inference that there was something at and about this bridge which had something to do with the prevention of the escape of the water through the natural channel. One of the witnesses testified, that there was no accumulation of drift at the county bridge, constructed over this stream, in the vicinity of the railroad bridge, and on the same plane. A number of witnesses testified to the fact that early in the morning after this rainfall when they visited the bridge the water was escaping in the centre of the current beneath the bridge ; that the drift was lower in the centre than on the sides, and that on the east side, where the water had run from the creek on to the land along the railroad track, the drift was piled up to the apron of the bridge. One witness, an employe of defendant, testified that this drift, or some of it, touched the bottom of the creek. This would justify the inference that something in and about the bed of the stream must have caught it. And some of the witnesses testified that the pilings cut off up the east bank, where there was the greatest accumulation of drift, were left higher than the bed of the creek. The evidence further showed that on account of the immense pressure against this bridge it was forced out of line.

Some idea of the immensity of this accumulated drift may be gathered from the statement of one or more of the witnesses for plaintiff, that it occupied seven or eight men a day or more in clearing it from its lodgment in and about the bridge, and shoving it into the current.

Now that the twenty-two pilings, extending as they did, had a tendency to catch this drift and obstruct the

natural flow of the water through the channel, is not, we think, an unreasonable inference for the jury to have made. And that the defendant itself so considered it is evidenced by the fact that after this flood it cut down those pilings to the surface of the ground; and although in the opinion of some of the witnesses, there was afterwards as violent a flood of waters as that of 1879, no such overflow occurred after the removal of the pilings, while the bridge itself was carried away.

It cannot be denied that the evidence showed that the rainfall in question was unusual and most violent. According to plaintiff's witnesses but few such storms had occurred. There was one in 1865, and perhaps one since, equal in force and destructiveness, if the plaintiff's witnesses are credited. And some of the witnesses stated that they did not think the channel of the creek adequate to have carried off all the water that ran into it during this rain; while others thought the damage would not have occurred without the obstruction. · We are also free to say that in our judgment the weight of the evidence in this case greatly preponderated in favor of the contention of defendant that the extraordinary volume of water which collected into Rush creek, on this occasion, was beyond the capacity of its banks; but it requires some weighing of the evidence, some analyzation and deduction from the facts not altogether harmonious, to form this conclusion. Whenever the judge on the bench is required to do this, in order to withdraw the case from the jury, he is on dangerous ground.

The moment he begins to adjust his judgment on considerations of the reasonableness of the jury's conclusions, drawn from disputable facts, there is imminent danger of substituting his judgment, his analysis and discrimination, for that of the jury, who alone, the wisdom of the ages as well as the organic law of the land declares, shall respond in such juncture. While the judge should not hesitate to say, in a proper case, that the jury shall not despoil the citizen of his property

without evidence, yet I concur with Sir William Blackstone in the conviction, that the real danger in the administration of justice, lies rather in the extension of the true province of the judge than in the latitude of the jury. Juries are as little liable to blunder on the facts as the judge on the law. Without reviewing in detail the decisions, we deduce the following as the substance of the rule established by our Supreme Court touching this matter: Where there is a complete failure of evidence, or admitting all the facts proved, if a verdict for the plaintiff would violate common sense and obvious reason, the court should interfere; to authorize such interference "the evidence must not merely be weak, but in fact there must be no evidence"; the court can make no inference of fact in favor of defendant, for "that would clearly be usurping the province of the jury."—*Routsong* v. *P. R. R.*, 45 Mo. 237; *Kelly* v. *R. R.*, 70 Mo. 608, 609; *State* v. *Musick*, 71 Mo. 401.

And in passing on the demurrer to evidence, the court will make every inference of fact in favor of the party offering the evidence which it warrants, and which the jury might with any degree of propriety have inferred.— *Wilson* v. *Brd. of Ed.*, 63 Mo. 137; *Buesching* v. *Gas Co.*, 73 Mo. 231.

Much that has been said concerning the state of affairs at Rush creek bridge is not impertinent to that at Milton creek bridge. There were some pilings there, though it is not apparent that they were so obstructive as those at Rush creek. There were some pilings placed in the bed of the creek, and used as supports for the bents. There was quite a reflux of the water from that bridge, which flowing back along the north side of the railroad track until it met the waters flowing from Rush creek helped to swell the volume precipitated upon the lands of plaintiff. The bed of this branch was quite shallow at this bridge, and very little obstruction would interfere with the escape of water beneath the bridge. Some willows had grown up in the bed of the branch, and the plaintiff, to give an outlet for the water accumulating

there, had dug a ditch to drain it off towards the Platte river. The plaintiff had also hung a watergate at this bridge to restrain cattle from passing under it on to his premises. This gate was hung on the south side of the bridge. Defendant contends that the plaintiff's act, in thus hanging this gate, obstructed the free flow of the water there. It is not obvious how this gate could have contributed to the reflux of the water. Suspended as it was from the stringers of the bridge on the south side, and the water flowing from the north to south, the water, quite naturally, as stated by one of the witnesses, would lift up this gate, which would float on its surface. Besides all this, the evidence further showed that this gate was torn loose from its fastenings by this flood and thrown to one side below the bridge.

Our conclusion is, as this demurrer went to the whole of the evidence, it was properly overruled, and that there was evidence sufficient to warrant the trial judge in sending the case to the jury.

2. The appellant has reviewed at great length the instructions given by the court, and insists that they are pregnant with error. The criticism made on the first instruction is, that it makes the test of defendant's liability to depend upon the reasonableness or unreasonableness of the obstructions, rather than the necessity of them.

It is always important in the consideration of instructions to keep in mind the questions actually at issue and on trial in the given case. A proposition of law advanced in a single instruction, abstractly considered, may be legally inaccurate, yet, taken in its combination and with reference to what the jury must have understood to be the real import of the declaration, it may be neither vicious nor misleading.—*Mathews* v. *St. L. Gr. Elev. Co.*, 59 Mo. 478.

As we have already stated, the real controversy, as it was narrowed on the trial, was, as to the agency the pilings had in causing the waters to overflow. The instructions, taken as a whole, quite clearly indicated to

the jury that such was the controversy. And the instructions asked by the defendant show that its counsel so regarded the issue.

More than anything else, for the protection of the defendant against any preconceived notions the jury might entertain respecting the right and duty of defendant in placing its bridge over these natural water-courses, the court in its first instruction advised the jury that the defendant had the legal right to construct its bridge over the creeks, but in doing so it should not unreasonably obstruct the flow of water and drift customarily flowing therein, at low and ordinary high stages; but that such duty did not apply to the instance of "unexpected and extraordinary floods or freshets." This, certainly, was all the defendant should demand.

The statute, while giving defendant the right to construct its bridge over this water course, declares that "the company shall restore the stream to its former state, or to such state as not unnecessarily to have impaired its usefulness."

Had the court been directing the jury in an issue as to the manner of constructing the bridge, the statutory language would have been preferable. But as applied to this case, and in reference to the thought conveyed necessarily to the mind of the jury, the term, "unreasonable obstruction," could not have mislead the jury, and, therefore, it is not reversible error.—Rev. Stat. sect. 3775; *Morris* v. *H. & St. J. R.,* 79 Mo. 368; *Sparling* v. *Conway,* 75 Mo. 570; *Noffsinger* v. *Bailey,* 72 Mo. 216; *State* v. *Hopper,* 71 Mo. 425.

3. The second instruction is objected to on the ground that it asserts that either placing pilings in the bed of the stream and suffering them to remain, or leaving them there above the water, entitled the plaintiff to recover, regardless of whether the same was necessary in constructing and maintaining defendant's bridge and road. We will here say, what is a complete answer to much of the objections made by defendant throughout, that counsel seem wholly to overlook the uncontroverted fact that

the pilings at Rush creek, at the time of the injury, were not employed by defendant, either in the necessary construction or the maintenance of its bridge. There is no foundation whatever for any such pretext. The pilings had long since served out any legitimate office they may have performed. They had been cut down by defendant as useless to it; and after this flood, discovering, perhaps, that they were a positive injury, defendant cut them still closer to the ground.

Having unnecessarily left them projecting above the water, if the jury found that they obstructed the channel of the stream to plaintiff's injury, the court could, as a matter of law, have told the jury that constituted negligence. It was a nuisance. So when the plaintiff's evidence showed the act of negligence and the resultant injury, he had made out a *prima facie* case, and the burden then shifted to the defendant to show that the pilings were a necessity to it, in supporting or protecting its bridge.—*Kenny* v. *H. & St. J. R. Co.*, 70 Mo. 243, 244; *Ib.* v. *Ib.*, 70 Mo. 252.

4. The objection made to the third instruction is, that it made defendant's non-liability on account of the extraordinary character of the rainfall to depend on the propositions, first, that said bridges were of sufficient capacity, and, second, that they were sufficiently free from obstructions placed there by defendant to allow the water to pass without any material obstruction at all times of ordinary high stages of water. This criticism, we will not say is a perversion of language, but it is an inversion of the proposition announced by the instruction. The first part of the instruction defendant ought not to complain of, for it is predicated on the fact of the pilings being used for supports or in reconstruction, whereas there was no evidence of such use at the time in question.

But what the instruction directly enough does assert is, that although the jury may find from the evidence that the pilings were not properly cut down, and if they should find that the bridges were of sufficient capacity,

and so free from obstructions placed there by defendant to allow the passage of water at ordinary stages; yet if the non-passage and the drift were because of "an unexpected and extraordinary freshet or flood," the plaintiff could not recover. This is its plain interpretation, and it gave the defendant every reasonable benefit of the character of the flood on which it so much relied throughout the trial. The court was not defining to the jury what would constitute an unreasonable or unnecessary obstruction, but rather conveyed to the jury the thought, that if the injury resulted from the unusual character of the flood 'they should find for the defendant.

5. The objection made to the fourth instruction is, that the damages resulting from the combined office of the pilings and the flood are too remote. In other words, although the defendant did negligently leave the pilings in the channel of the creek, it could not be held to accountability for the injury resulting from an unusual rainfall combined therewith, as such a flood could not be within the reasonable and probable anticipation of the defendant. Stripped of its refinement, the objection presents the naked question: Whether the defendant, in committing a positive tort, as to the public, by leaving unnecessarily in the bed of a natural water-course an obstruction like these pilings, should not take notice of the probable course of nature, and the violence of rainfalls within known isothermal lines? The rule in actions of torts is, that the tort-feasor must make reparation for such losses consequential on his wrongful act, as might reasonably have been expected under the particular circumstances to ensue; "such as according to the common experience and the usual course of events might reasonably be anticipated." The injury must proceed from and be caused by the wrongful act of the defendant; but the causation is not to be tested metaphysically or by any occult principles of science, but rather as persons of ordinary intelligence apprehend cause and effect, and see one fact proceed from another.—Sutherland on Damages, 21.

Where a party violates a duty to the public, it is just and reasonable that he should make recompense to every person injured, where the injury is the natural or probable consequence of the misconduct.—*Snelling* v. *McDonald*, 14 Gray 292. There must, of course, be such nearness in the connection between the injury and the negligent act that it must be the primary cause, and where there is a concurrence of some other immediate agency in producing the injury, that event must have been the effect of the act complained of, or within the range of probable occurrence to a person of ordinary circumspection while engaged in the act.—Sutherland on Damages, 57.

Necessarily the application of these rules must be left to a sound judgment, and is a mixed question of law and fact. Defendant claims that such a rainstorm as this was so unusual and extraordinary as not to have been within the reasonable anticipation of defendant. We are referred to a number of authorities in support of this position. But they are not relevant. *Railroad* v. *Reeves* (10 Wall. 176) is the case of liability of a carrier. A rainstorm of unexampled violence prevailed in the region of Look Out Mountain on the line of railroad, submerging the track, and rendering it impassable. Plaintiff's complaint was that if the defendant had sent the goods along according to contract they would have passed the danger point before the storm. It was held that there was no such connection between the defendant's imputed negligence and the rainstorm as to make the defendant liable. This was an action on the undertaking of a carrier, from the operation of which the casualties incident to the act of God and the public enemy are excepted.

So the much cited case of *Morrison* v. *Davis & Co.* (20 Pa. St. 171) is where a boat was wrecked on a canal by a storm. The plaintiff sought to recover of the transportation company because a lame horse used by it in towing the boat delayed the boat, and brought it within the sweep of the storm. Of course he could not recover. It was an incident against which the freighter could not

guard, for he was just as liable to have gotten into a similar storm if he had started earlier, and would have wholly escaped it if he had started later.   So there was no connection in time or incident between the negligence of the carrier and the storm.   They were wholly independent.

Judge Black in *Pittsburg City* v. *Grier* (22 Pa. St. 66), with his characteristic terseness, expressed the principle applicable to the case at bar:   "A cause is not too remote to be looked to merely because it produces the damage by means of intermediate agency.   Where the injury is the immediate consequence of some peril to which the suffering party was obliged to expose himself in order to avoid the one for which he sues it is proximate enough."

The question here is more like that in *Scott et al.* v. *Hunter* (46 Pa. St. 192).   The wrong-doer by the manner of mooring his boats in the river interfered with the navigation of plaintiff's boat, and detained it, whereby it was exposed to a rapid and unexpected rise of the river, and was, by the force of the current, carried over a dam and lost.   The trial court held, as a matter of law, that the sudden rise of the river, and consequent damage to plaintiff's boat, could not reasonably have been anticipated by the defendant, and so the damage was too remote.   The court, through Strong, J., held that what is and what is not negligence depend upon the surrounding circumstances; and that a party under some circumstances must anticipate and expect more than under other situations; and that the trial court should have submitted the fact to the jury.   He said:   "It was a natural consequence, if it should have been foreseen, or if it would have been guarded against by men of ordinary prudence, using their own rights with proper regard to those of others.   And it was manifestly for the jury to determine whether it was a natural consequence, such as should have been foreseen by the defendants at the time, etc."

And further the court say:   "The wrongful act of the

defendants was concurrent in time and in operation with the flood in the river. It was both combined that forced plaintiff's boats over the dam."

In *George* v. *Fisk* (32 N. H. 32), the defendant put a large number of logs on the ice of a river, and left them there until the ice broke up, when a dam was formed by the logs, whereby a channel was cut through the plaintiff's lands, and the logs carried upon it. The defendant was held liable for the injury. In *Dickinson* v. *Boyle* (17 Pick. 78), the defendant broke and entered the plaintiff's close adjacent to a river, and carried away gravel from a point near the dam, in consequence of which a flood of much violence in the river, three weeks afterwards, swept away part of plaintiff's close and a cider mill. The court held him liable for the whole damage done plaintiff.—*Guille* v. *Twan*, 19 Johns R. 381; *Hay* v. *Cohoes Co.* 2 Comst. (N. Y.) 159.

If a railroad company should negligently put out fire on its right of way, or if it negligently allow · grass to grow on its right of way, and fire is communicated by one of its passing trains to this grass, which fire is carried by reason of an unusual high wind rising at the instant, to adjacent farms, and destruction follows in its wake, the company could hardly be heard to lay the act to God and escape judgment.—*Paeppers* v. *M. K. & T. Rwy. Co.*, 67 Mo. 715.

We think it not too much to say, that in this latitude, and the common experience of men, a party should take notice that such streams as Rush and Milton creeks are liable to sudden rises and overflows. Such things are too common. The defendant in fact sought throughout the trial to make it apparent that the banks of these streams were shallow, and liable to overflow. It is not too much therefore, to say that the company should be held to take notice of the constant peril to which it was exposing the farms adjacent, by suffering an obstruction placed by it in the stream, thereby augmenting the danger.

6. The final contention of defendant is, that the court erred in not declaring the law to be that if the

defendant's negligence combined with the extraordinary character of the flood to produce the injury, the plaintiff could not recover. Counsel treat this aspect of the case as if the injury were the act of two tort-feasors, where the damages cannot be apportioned; and in support we are cited to the case of *Larkin* v. *Taylor* (5 Kan. 433). That was the case where the plaintiff was in fault himself. He sought to recover from the defendant for, damage done his crops by the trespass of stock on his premises. The evidence showed that he had failed, to maintain a lawful fence, to protect himself against cattle running on the commons, where the owner had a right to turn them. The plaintiff, in answer to his own breach of duty, claimed that the defendant was negligent in permitting his cattle to run out where they might go on his premises, knowing they were not enclosed. The court very properly says: "That a person guilty of negligence in a particular matter cannot recover of another whose negligence equally contributed to the injury. Where both parties are in the wrong there can be no recovery of the one against the other. The law will not apportion the damages suffered by wrong-doers."

This doctrine hardly applies to the case where the party seeking to recover does not contribute to the injury. As is said by Strong, J., in the *Del. & H. Canal Co.* v. *Torrey* (33 Pa. St. 148), where several parties had contributed sawdust that interfered with the plaintiff's enjoyment of the canal, and the defendant contended that unless the injury resulted wholly from the dust contributed by him the plaintiff could not recover; "If this be so, then the basin of the plaintiff might have been filled without any legal injury to them, for the contributors to the deposit might have been so numerous that the share contributed by each would be inappreciable."

We repeat that the real issue in this case was: Did the injury to the plaintiff's crops come directly from the negligent act of the defendant, without which the injury would not have occurred? We think this issue was directly placed before the jury in the instructions, and

they must have found in their conclusion that, notwith-standing the great rainfall, the water would not have injured plaintiff as it did, but for the wrongful act of defendant.

7. In the fourth instruction given by the court, the jury were told: "You may add to such amount (of damage) interest at the rate of six per cent. per annum from the date of the commencement of this suit." Interest is not allowable in such cases.—*DeSteiger* v. *Railroad* 73 Mo. 33. To obviate any complaint on this ground the plaintiff has entered a *remittitur* in this court of such interest as the jury might have awarded. Besides which, it is quite palpable from the amount of the verdict that the jury did not award any interest, as the amount of the verdict is far below the lowest estimate of the amount of damage done the plaintiff by any witness.— *Wade* v. *R. R. Co.*, 78 Mo. 366; *Morris* v. *R. R. Co.*, 79 Mo. 370. It may be as well to observe, that the decision in *Wade* v. *R. R. Co.* (*supra*), is not, in our opinion, to be extended. Its tendency is bad, as it invites the court to go into the jury room, and inquire into the means by which they reached their verdict. But we are relieved of any embarrassment in this case.

We have given this case considerate examination, and have prolonged this opinion out of due proportion, because of the extreme persistence of counsel. Our aim has been to declare the law, and leave the jury to pass on the facts.

The judgment of the circuit court will be affirmed, less the amount of interest at the rate of six per cent. per annum from the date of the commencement of suit until the day of the rendition of the judgment. All concur.