FORRESTER v. MOORE, *Plaintiff in Error.*

| | |
|---|---|
| 77 | 651 |
| 96 | 660 |
| 77 | 651 |
| 37a | 152 |
| 77 | 651 |
| 108 | 293 |
| 77 | 651 |
| 50a | 612 |
| 51a | 198 |
| 77 | 651 |
| 120 | 565 |
| 77 | 651 |
| 148 | 348 |
| 77 | 651 |
| a156 | 876 |

1. **Fraudulent Conveyances.** A preference among creditors will not be held invalid for fraud on the part of the debtor alone. It must appear that the preferred creditor participated in the fraud.

2. ———: INSTRUCTIONS AS TO BONA FIDES. The *bona fides* of a transfer of personalty being in issue in this case, the court instructed the jury that in determining the question they should "consider all the facts and circumstances detailed in evidence." *Held*, that this was proper and sufficient, and the party alleging fraud was not entitled, under the conditions of this case, to instructions specifying in detail what facts or groups of facts were badges of fraud.

3. ———: MORTGAGE. A debtor conveyed land to a trustee for the benefit of one of his creditors. Afterward the creditor consented that the land should be exchanged for a portable saw mill, on condition that the title to the mill should be vested in him, but the defendant should have possession of it, operate it and out of its earnings pay the creditor's demand. There was no agreement as to who should own the mill after the debt should be paid. The exchange was effected, a bill of sale for the mill taken in the name of the creditor, and the mill placed in possession of the debtor. *Held*, that the transaction did not amount to a mortgage of the mill, so as

to require the bill of sale to be recorded, in order to be valid against other creditors of the debtor under section 8, page 281, Wagner's Statutes. Neither could it be regarded as a gift or sale by the debtor within the meaning of section 4, page 280, or section 10, page 281, Wagner's Statutes.

4. **Resulting Trusts.** The evidence essential to the creation of a resulting trust, must show the contract clearly and unequivocally, so as to leave no room for reasonable doubt.

Such a trust will arise in favor of a third party when he furnishes the purchase money and the party in whom the title is placed is a mere volunteer.

5. **Fraudulent Conveyances.** Only subsequent creditors can question the validity of a claim to personalty in the possession of a debtor by a third person, on the ground that the evidence of the latter's title is not recorded.

*Error to Schuyler Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*Higbee & Shelton* for plaintiff in error.

*Knott & Caywood* for defendant in error.

PHILIPS, C.—This is an action of replevin instituted in 1877 by Forrester, the defendant in error, to recover the possession of a portable saw mill of the alleged value of $1,000. Moore was the acting sheriff of Schuyler county, and as such had levied on this mill as the property of one Wm. Buford, under several writs of *fi. fa.* issued on judgments in favor of different creditors against the partnership firm of Gray and others, of which Buford was a member.

Defendant's answer tendered the general issue, except as to his possession, and then justified under the writs of execution, and averred that the mill, at the time of the seizure, was in Buford's possession, that Buford was the owner thereof. On the trial, Buford testified that the mill belonged to plaintiff; that in 1872 he owed plaintiff a note for $1,550, and in 1873, finding his firm to be in failing

circumstances, in order to secure plaintiff, he deeded to his son, who was also plaintiff's son-in-law, 120 acres of land in Putnam county. In 1875, the plaintiff consented that said land might be traded to one Shively for the mill in question, if Buford would take the mill for him and run it.

The bill of sale therefor was made to plaintiff, and Buford took the same to run it with the privilege of paying off the note of $1,550 out of the earnings of the mill if he could, or with the privilege of selling it for such purpose. He testified that it was an honest, *bona fide* sale, etc., and he was corroborated by the testimony of the plaintiff. The mill proved unprofitable. Buford had retained possession of it up to the time of seizure, as did plaintiff Buford's note. Something had been paid on the note. Plaintiff stated, *inter alia*, that when Buford should pay off the note, he supposed the mill would be his, though there was no agreement to that effect. He had paid no taxes on the mill. The bill of sale of the saw mill to plaintiff was duly acknowledged, but not recorded. This was the substance of plaintiff's evidence.

The only evidence offered by defendant was the judgments and executions under which the levy was made. They bore date in 1877.

The court, of its own motion, gave six instructions, and the defendant asked nine additional instructions, which the court refused. The jury found the issue for plaintiff, and defendant has brought the case here on writ of error. The errors complained of by defendant are the refusal of his instructions. This renders it necessary to incumber this report with their reproduction. Those given by the court are as follows:

1. The court declares, from the testimony, that the property in controversy is personal property.

2. If the jury believe from the evidence that Wm. Buford was indebted to Lewis Forrester in the sum of $1,550, and that Wm. Buford became involved, and in

good faith, for the purpose of better securing this debt, deeded a tract of land in Putnam county to one Henry Buford, who was the son of Wm. Buford and the son-in-law of Forrester, for the purpose of said Henry holding the aforesaid tract in trust for the benefit of Forrester, and if the jury believe from the evidence that afterward the said Henry Buford, with the consent of Forrester, deeded said land to one Shively for the mill in question, and that a bill of sale was taken for the same in the name of Forrester, the jury should find for the plaintiff.

3. Wm. Buford had a right to prefer any one or more of his creditors in good faith, although said preference may have operated to hinder and delay other creditors.

4. Although the jury may believe from the testimony, that Wm. Buford, in securing Forrester, may have intended to defraud his other creditors, still if they believe from the testimony that Forrester did not participate in such design and acted in good faith, then the preference was not fraudulent.

5. If, however, the jury believe from the evidence that Wm. Buford was insolvent or largely indebted, and for the purpose of hindering or delaying, or cheating or defrauding his creditors, he deeded the said land to Henry Buford, and afterward, for the same purpose or with the design of further carrying out said fraudulent purpose, traded said land for the mill in question, and for the purpose afterward took the bill in evidence to Forrester, then the jury should find a verdict for defendant.

6. In determining the question of the good or bad faith of the transaction, the jury may consider all the facts and circumstances detailed in evidence. The burden of proving the fraud is upon defendant.

Defendant then prayed, but the court refused to give, the following instructions:

7. If the jury believe from the evidence that Wm. Buford deeded the land in Putnam county to his son,

Henry Buford, in fact to secure Buford's note of $1,550 to Forrester, and that Wm. Buford traded said land, by plaintiff's consent, to Shively for the saw mill in controversy, and by Buford's direction, Shively executed the bill of sale of said mill to plaintiff, and that it was intended by plaintiff and Buford that said bill of sale should be a security for the payment of said note, and that the mill was not in fact taken as a payment on said note, and that said mill was not in fact delivered to plaintiff, but to Buford, and that Buford took actual possession of and retained said mill till levied on by defendant, under executions against Buford, then said bill of sale was in fact a mortgage, and not being recorded was void against Buford's creditors, and the verdict will be for defendant.

8. If the jury believe from the evidence that under the bill of sale, Buford, by Forrester's consent, took possession of the mill, and had power, by agreement with Forrester, to sell the same and receive the proceeds, then said bill of sale is void. and the verdict will be for defendant.

9. If the jury believe from the evidence that the bill of sale was intended in fact as a mortgage, and the mill was in fact delivered to Buford, although there may have been an understanding or agreement between Forrester and Buford, that Buford received actual possession of the mill as agent for Forrester, but that Buford was to have the use and possession of said mill for his own use and benefit, and Buford has ever since had actual possession and used and operated the same as his own, and Forrester has never had actual possession of it, such bill of sale operated as a mortgage on personal property, and not being recorded, was void against all creditors prior and subsequent to the date of said bill of sale, and the finding will be for defendant.

10. If the jury believe from the evidence that plaintiff executed an absolute deed of conveyance to his son Henry of the land in Putnam county, for the purpose of securing an indebtedness to plaintiff, and was at the time of making

such deed insolvent and unable to pay his debts, as they fell due in the ordinary course of business, such deed is a. badge of fraud.

11.   If the jury believe from the evidence that plaintiff, in securing an indebtedness to Forrester, conveyed the land in Putnam county, which they believe was an excessive amount of property, over and above what was sufficient to secure said indebtedness, then such conveyance raises a presumption that Buford intended to secure the use of said property to himself and baffle his creditors, and is a badge of fraud, and if they further believe from the evidence that the indebtedness of Forrester was at the time amply secure under any and all contingencies, and so known to Forrester, without the security on the Putnam county land, they will find for defendant.

12.   If the jury find from the evidence that in 1870 or 1871, Buford and Reed gave Forrester a note for $1,550, as a balance due on a sale of a farm in Schuyler county, sold by Forrester for $4,550; that Forrester suffered said note to remain unpaid until the year 187—, when Buford voluntarily deeded the land in Putnam county to his son Henry, (plaintiff's son-in-law,) for an expressed money consideration, but in fact intending it as a security for the above mentioned note, without plaintiff's knowledge or request; that plaintiff suffered said note to remain unpaid until September, 1875, when, at Buford's request, the said land was traded to Shively for the saw mill in question,. and that plaintiff has suffered said note to remain unpaid to the present time, and has taken no steps to collect said note, and that Buford has been insolvent all that time; then, all such transactions are badges of fraud, and circumstances for the consideration of the jury, and unless plaintiff has shown to the jury, by a preponderence of the evidence, that all such transactions are fair and honest, and in good faith, and that such delay in enforcing the collection of said note has not been, in whole or in part, for the purpose of enabling Buford to cover up or conceal his property and

withhold it from the reach of his creditors, then the finding will be for defendant.

13. The court declares that the fact that a bill of sale was executed for the mill from Shively to Forrester; that it recited a consideration different from that actually paid for it, and the fact that the bill of sale has not been recorded, are each badges of fraud, and raise a presumption in law that such transactions are fraudulent, and unless plaintiff, by a preponderance of the testimony, satisfies the jury that the bill of sale was taken in good faith and for an honest purpose, and the consideration recited therein was not varied from the true consideration for the purpose of deceiving any of Buford's creditors, or for any dishonest purpose, or that Forrester has not omitted to have said bill of sale recorded for any purpose of giving Buford a false or fictitious credit or of aiding Buford in concealing his property, or for any unlawful purpose, then the finding will be for defendant.

14. If the jury believe from the evidence that the bill of sale was intended as a security for the $1,550 note, but that at the date of said bill of sale Wm. Buford was in embarrassed circumstances, and then indebted to the parties mentioned in defendant's answer, or either of them, and that judgment was rendered upon any of such indebtedness as mentioned in said answer, and that any of such judgments remain unpaid, and that said bill of sale was based upon any understanding, either express or implied, that Forrester would suffer the payment of said note to be indefinitely postponed, then the court instructs the jury that said bill of sale was not intended as a *bona fide* security of said note, and the finding will be for defendant.

15. If the jury believe from the evidence that, at Buford's instance, Shively executed the bill of sale read in evidence to Forrester, and that said bill of sale was intended by Buford and Forrester as a mortgage of said mill, or as a security for the payment of said note, then the fact that said bill of sale is absolute upon its face, and

42—77

that it fails to show upon its face that it was a mortgage or security for the payment of such note, is a badge of fraud, and raises a presumption in law that such bill of sale was fraudulent and designed by Buford and Forrester to cheat and defraud the creditors of Buford, and unless the plaintiff has shown the jury, from the evidence in this cause, that the failure to have said bill of sale recite the true purpose for which it was held by plaintiff, and that upon the payment of said note the title to said mill should vest in Buford, was not from any purpose of deceiving any of the creditors of Buford or for any purpose of enabling Buford to cover up or conceal said property or withhold it from the reach of his creditors, then the finding will be for defendant.

The great number of instructions asked in this case illustrates a growing fault in the practitioner. The interminable multiplication of instructions not only incumbers the record in a cause, and unnecessarily burdens the trial and appellate courts with their examination and analysis, but if given as requested, would often confound and bewilder the triers of the facts, instead of aiding and enlightening them as designed by the law. In a case like this, where the issues are few and simple, it is not perceived why all the controlling questions of law arising, could not be intelligibly presented in a few declarations. It was, no doubt, under the commendable impulse of this view of the proper practice that the learned trial judge refused defendant's instructions *in toto*, after fairly presenting, as he conceived, the real issues.

The instructions given by the court, taken as a whole, were a fair presentation of the law of the case. If there is any error in them it is in the fifth, and in defendant's favor. It, in effect, told the jury that if, in the transaction in question, Buford had acted in bad faith toward his creditors, and designed to defraud them, they should find for defendant. This authorized a verdict for defendant, although the plaintiff's debt may

1. FRAUDULENT CONVEYANCES.

have been *bona fide*, and his conduct free from fraud, and without participation on his part in the fraudulent act and intent of Buford. It is not sufficient to avoid a preference of one creditor that the debtor should design to hinder or delay or defraud his other creditors, but it must appear that the preferred creditor participated in some way, in that evil design, or was not acting from an honest purpose to secure his own debt. *Shelley v. Boothe*, 73 Mo. 77.

It is too obvious to demand any particularization that many of defendant's instructions are commentaries on the evidence. This objection his learned counsel seeks to parry by the suggestion that in a case of fraud, where so many concurring incidents constitute the fact in law, it is proper and just to the party holding the affirmative, for the court in instructions to declare what are badges or indicia of fraud, and by grouping them together, enable the jury to see intelligently the effect in law of the facts in evidence. The language of HENRY, J., in *Zimmerman v. Hann. & St. Jo. R. R. Co.*, 71 Mo. 491, is cited, in which it is said: "Instructions of that character are far more satisfactory guides to the jury than those which deal in vague generalities," * * leaving " them at sea, each one to determine for himself what such care and caution is."

Principles of law and rules in practice, while they should have an unvarying character, and be as guide-boards at all times, yet care must ever be vigilantly exercised to limit their proper application. They must be just so flexible as to recognize the reasonable differences in the legal status and qualities of cases as they arise. For instance, because in a given class of cases, and under peculiar phases of facts incident to them, it is permissible to array these facts in an instruction and declare to the jury the result which the law attaches to such facts when proven, counsel must not conclude that under the sanction of the language employed therein by the court license is given to indite legal essays or inject an argument to the jury in an instruc-

*(margin note: 2. ——: instructions as to bona fides.)*

tion.  *Mathews v. St. Louis Grain Elevator Co.*, 59 Mo. 474.
Lord Coke said :  " With respect to the question of law,
the jury must not respond, but only the judges.  So, or
in like manner, or under like restrictions, the judge must
not respond to questions of fact, but only the jury."  It is
the recognition of this province of the jury that has so
repeatedly and persistently induced our courts to pronounce
against instructions commenting on the evidence, or sin-
gling out one or more facts of the case and directing the
attention of the jury that way—and this for the reason
that such instructions unduly influence from the bench the
judgment of the jury, and tend to substitute for their esti-
mation and analysis of a given fact, the mental and moral
bent of the judge.  If this may be done in one case, it can
in another, until the judge from the bench will invade the
jury box and displace the twelve triers of the facts.

It is proper enough, as in the case above cited present-
ing two affirmative phases of negligence, one on the part
of defendant, and the other on the part of plaintiff him-
self, to declare in terms to the jury the legal effect of facts
in proof as establishing the one negligence or the other.
As in such cases the plaintiff usually has instructions de-
claring to the jury if they find this and that fact, it will
amount to negligence, and authorize a recovery, so the
defendant, in a proper case, is entitled to a like instruction,
declaring what acts and conduct on the plaintiff's part will
constitute contributory negligence and prevent a recovery.

In the case under review the question at issue was :
Did the mill, at the time of the levy, belong to the plaintiff ?
If it did, that made out his case.  In the instructions given
by the court, the attention of the jury was plainly enough
directed to the leading facts of the whole transaction ; and
they were told that, in determining the good or bad faith
of the parties, the jury were to " consider all the facts and
circumstances detailed in evidence."  This was proper and
sufficient.  *Ragsdon v. Trumbo*, 52 Mo. 35 ; *Jones v. Jones*,
57 Mo. 138 ; *State v. Smith*, 53 Mo. 267 ; *Rothschild v. Am.*

*Cent. Ins. Co.*, 62 Mo. 356.   Under these instructions the jury must have found that Buford was *bona fide* indebted to plaintiff on the note in question; that the land in Putnam county was conveyed by Buford to his son in good faith for the sole purpose of securing to plaintiff the said debt; that the land, with plaintiff's consent, was exchanged for the saw mill, and the title to the mill was placed in the plaintiff as the *bona fide* owner, free from fraud and collusion between him and Buford.   This is all the law exacts.

Defendant claims that the seventh instruction should have been given, because he was entitled, under the evidence, to have the question passed on whether or not the bill of sale to plaintiff for the saw mill was not, in fact, a mortgage as between him and Buford, and not having been recorded, it was by operation of section 8, page 281, Wagner's Statutes, void as to Buford's creditors.   There is at first view merit in this position.   If the mill had been conveyed direct from Buford to plaintiff, with the express agreement that it was merely as security for the debt, possession of the property remaining with Buford, it would have been in effect a mortgage. The test as to whether it is a mortgage or sale, is, if the relation of debtor and creditor continues, and the debt still subsists between the parties, it is a mortgage.   *Slowey v. McMurry*, 27 Mo. 113.   Inasmuch as there were facts developed on the trial tending to show that the plaintiff still held Buford's note, and that the plaintiff would convey the mill to Buford on payment of the note, there was color of a mortgage arrangement.

But let us get back of this curtain, and see if it be not illusive.   The bill of sale came not from Buford.   He never owned this property.   True, it was bought with land owned by Buford; but the jury have found the fact to be that this land was held by a third party in trust for plaintiff, and that plaintiff consented that this trust property, of which he was the beneficial owner, might be sold

by the trustee on the express condition that the mill should be taken in exchange, and the absolute title put in him, if Buford would take charge and run it, and out of the proceeds of its earnings enable plaintiff to realize his money. By that transaction plaintiff became the owner and Buford his bailee, from whom the plaintiff might, at any time he deemed fit, have demanded the possession.

And it is in this connection and light that we must interpret the language extracted from the plaintiff on cross-examination: "I hold it as security for the note, though there was no agreement of that sort." Under such proof could Buford have maintained an action for redemption? The fact that the plaintiff may have designed in his own mind to permit Buford to redeem was not sufficient. It must have been communicated and assented to, to constitute the contract. The evidence essential to the creation of resulting trusts must show the contract, clearly and unequivocally, so as to leave no room for reasonable doubt. *Ringo v. Richardson*, 53 Mo. 385, *Kennedy v. Kennedy*, 57 Mo. 73. The title having, by express agreement, on a consideration moving from the plaintiff, been placed by Shively in him, no resulting trust could arise in favor of a third party. Such trusts only arise in favor of such third party where he furnishes the purchase money and the party in whom the title is placed is a mere volunteer. Story Eq., § 1201 a; Perry on Trusts, § 143.

**4. RESULTING TRUSTS.**

Nor has the 4th nor 10th sections of Fraudulent Conveyances, (Wag. Stat., p. 281,) any application to the facts of this case. Buford never sold this property to plaintiff. He never had possession of it except as the bailee or agent of the plaintiff.

Some of the defendant's instructions raise the question that the possession of the mill by Buford without any record evidence of plaintiff's title, was a badge of fraud, or rather was calculated to operate as a fraud upon creditors of Buford. There would

**5. FRAUDULENT CONVEYANCES.**

be much force in this suggestion had it been alleged in the answer and proved on the trial that the judgment creditors had dealt with Buford on the faith of his possession and supposed ownership of this property. But there is no such issue tendered by the answer, although it entered into special matter of defense; and if the issue had been properly raised there is no evidence in the record to sustain it. On the contrary, the bill of exceptions shows affirmatively that the debts represented by the judgments under which the mill was seized by defendant, were contracted in 1872, three years before the mill was bought of Shively, or Buford ever had possession of it. How then can it be claimed that Buford obtained any credit on the faith of his ownership of the mill?

The case seems to have been fairly tried, the judge responded to the law, and the jury to the facts. The judgment of the circuit court is, therefore, affirmed. MARTIN, C., concurs; WINSLOW, C., absent.