VAN METER v. HAMILTON *et al.*, *Appellants.*

**Deed of Trust, Setting Aside of:** EVIDENCE. Before the grantor can set aside a deed of trust or enjoin a sale thereunder on the ground that the consideration has failed, or that it was without consideration, he must, by his proof, make out a case by a clear preponderance of the evidence. The evidence in this case examined and *held* that it does not come up to this requirement.

*Appeal from Bates Circuit Court.*—HON. J. B. GANTT, Judge.

REVERSED AND REMANDED.

*A. Comingo* for appellants.

A sale under a mortgage or deed of trust may be enjoined on account of fraud. Before a mortgageor, or a grantor in a deed of trust, can avail himself of this remedy, his right to do so must be free from reasonable doubt; he must make out a strong and convincing case, by a clear preponderance of evidence, if the right is denied. The evidence should be as convincing as that required to establish the existence of a resulting trust; or that which would convert an absolute conveyance into a mortgage. *Ringo v. Richardson*, 53 Mo. 385; *Worley v. Dryden*, 57 Mo. 226; *Kennedy v. Kennedy*, 57 Mo. 76; *Forrester v. Moore*, 77 Mo. 651, 662; *Rogers v. Rogers*, 87 Mo. 257; 2 Jones on Mort., sec. 1805; 1 Devlin on Deeds, sec. 430.

*Gates & Wallace* for respondent.

(1) The finding of the chancellor will be deferred to by this court unless he has manifestly disregarded the evidence. *Snell v. Harrison*, 83 Mo. 651; *Sharpe v.*

*McPike*, 62 Mo. 300; *Royle v. Jones*, 78 Mo. 403; *Erskine v. Lowenstein*, 82 Mo. 301; *Renney v. Williams*, 89 Mo. 137. (2) In cases of fraud, evidences of other contemporaneous frauds may be strong proof of a fraudulent intent. Bump on Fraud. Con. [3 Ed.] 583; *Adler v. Lange*, 21 Mo. App. 516. (3) The admission of incompetent evidence is not sufficient cause for a reversa' where the appellant has not been injured by it, as where there is other competent evidence to establish the fact. *Julian v. Calkins*, 85 Mo. 202; *Ridgeway v. Kennedy*, 52 Mo. 24; *Miller v. Miller*, 14 Mo. App. 421; *Father Mathew v. Fitzwilliams*, 12 Mo. App. 445.

BLACK, J.—This is a suit in equity to enjoin the sale of real estate under a deed of trust. The history of the title to the land is this: W. S. Van Meter owned five hundred and fifty-four acres of land in Bates county, which was incumbered with a deed of trust for fifty-five hundred dollars. On the twenty-third of February, 1883, he made a second deed of trust thereon to secure his note of that date for two thousand dollars, payable to A. L. Hamilton, in nine months after date. The land, except one hundred and sixty acres, was sold under the prior deed of trust, and Isaac C. Van Meter, who is the father of W. S. Van Meter, became the purchaser. This sale paid off the prior deed of trust, so that the Hamilton deed of trust became the first lien on the one hundred and sixty acres. Isaac C. Van Meter thereafter became the purchaser of this one hundred and sixty acres. In 1885, A. L. Hamilton caused the land to be advertised for sale under his deed of trust, and thereupon the plaintiff, Isaac C. Van Meter, commenced this suit against A. L. Hamilton, as the principal defendant, to enjoin the sale. The court found the issues for the plaintiff, and gave judgment according to the prayer of the petition. Hamilton brings the case here by appeal.

The plaintiff insists that this two thousand dollar note and deed of trust was without consideration, or

rather that the consideration failed in whole. Whether this be true or not, depends upon a settlement had between W. S. Van Meter and A. L. Hamilton, at the date of the deed of trust, in respect of a certain lease then held by Van Meter on land owned by George Hamilton, who is the father of A. L. Hamilton. The evidence of the parties as to the settlement well discloses the real issues in this case.

It is an admitted fact that A. L. Hamilton, as the agent of George Hamilton, leased to W. S. Van Meter what is called section 18, and another tract of four hundred acres, all in Bates county, Missouri, for a period running from March, 1879, to March, 1884; that at the date of the deed of trust in question these parties had a settlement in respect of this lease, and that the lease was then surrendered to Hamilton. A. L. Hamilton resided in the state of Kentucky, and he came to Bates county and there agreed upon a settlement with W. S. Van Meter. The parties then went to Butler, in that county, to see Smith & Lashbrook, who had purchased the Van Meter land, the land in suit, at an execution sale made on a judgment against W. S. Van Meter. From there, they went to Kansas City, where the note and deed of trust were prepared, and on the next day they went to Independence, where the deed of trust was executed, and the settlement closed.

W. S. Van Meter explains the two thousand dollar note in this way: He says in his direct examination that the Wall heirs, who resided in Kentucky near A. L. Hamilton, owned one hundred and sixty acres of land adjoining his land in Bates county; that A. L. Hamilton agreed to buy this land for him, and to save and protect Hamilton for any advances made in the purchase of the Wall land, he made to Hamilton the deed of trust in suit. He says Hamilton purchased the Wall land and took the deed in his own name.

A. L. Hamilton testifies that he did purchase the Wall land in April, 1883, and paid therefor in cash

twenty-two hundred dollars; but that that purchase had no connection with the deed of trust in question. He says that by the terms of the lease of the George Hamilton land, W. S. Van Meter was to pay the taxes thereon and grow a stock hedge-fence around section 18, and if he, Van Meter, failed to grow the stock hedge-fence, then he was to pay a fair rent for the land. Hamilton testifies further that Van Meter's efforts to grow a stock hedge-fence had proved a failure in January, 1883; that they then agreed that Van Meter should surrender the lease; that he took some improvements, valued at three hundred and ten dollars, for the rent of 1880; and they agreed upon twelve hundred and eighty dollars as the rent for 1881 and 1882, on section 18, and that no rents were allowed as to the four hundred acres; that as a part of this settlement, Van Meter agreed to secure the twelve hundred and eighty dollars by a deed of trust, and that he agreed to and did loan Van Meter seven hundred and twenty dollars, and that those two amounts constitute the two thousand dollar note in suit.

This version of the settlement is corroborated by the evidence of J. C. Hamilton, who was present while the parties were at the house of W. S. Van Meter in Bates county. The proof is conclusive that Hamilton did, at Independence, pay Van Meter seven hundred and twenty dollars in cash. It may be stated here that one hundred and seventy-five dollars of this payment was sent in a check of Hamilton to a bank in Butler, to pay off the Smith & Lashbrook claim, which amount they did not accept for their claim.

W. S. Van Meter says there was no agreement that he should pay rent if he failed to grow a hedge-fence, that the terms of the settlement were that he was to surrender the lease, and A. L. Hamilton was to pay him rents for the unexpired year of the lease, 1883; and that Hamilton was to pay for all improvements placed on the leased land, the amount agreed upon for all being

twenty-three hundred and seventy-four dollars. He says the amount paid him in money at the settlement was in part payment of this last-named agreed sum. When this settlement was concluded at Independence and on the date of this deed of trust now in question, A. L. Hamilton, as agent for Geo. Hamilton, made a receipt to Van Meter, acknowledging payment in full of all demands on account of the lease, and at the same time W. S. Van Meter gave a receipt acknowledging payment in full by Geo. Hamilton, of all demands on account of buildings and other improvements upon the leased land ; and Van Meter therein agreed to surrender the leased lands to Hamilton on the first of March, 1883. Van Meter testified that he understood this receipt to be simply and only an agreement to surrender the lands.

It seems that Smith & Lashbrook refused to accept the check of one hundred and seventy-five dollars for their claim, and in May, 1883, A. L. Hamilton paid them three hundred and fifty dollars for a deed to himself.

On this evidence and the facts hereafter noticed, the judgment of the circuit court cannot stand. The circumstance that the Wall one hundred and sixty acres adjoined Van Meter amounts to little, for it appears that A. L. Hamilton owned land adjoining the same tract, so the purchase was as desirable for one as the other. Again, at the date of this deed of trust, W. S. Van Meter was involved and hard pressed with debts, to the knowledge of Hamilton, and it is not likely that the latter would undertake to buy the Wall land for Van Meter, having only a second deed of trust to secure his advances. In this state of affairs, it is much more reasonable to believe that he desired to get security for what was due on the lease. Van Meter seems to have put up fencing on the four hundred acres, but Hamilton says that for this work he surrendered to Van Meter the latter's note for $168.66. Van Meter does not mention this transaction at all, or

deny the fact that he got the note in payment of that work.

The receipts executed by the parties at the date of the settlement are a denial of Van Meter's statement of the settlement, and his explanation of the one which he signed is not satisfactory, in view of the fact that these parties were together three days perfecting and completing the settlement. The evidence of Smith & Lashbrook does show that Hamilton said he was buying the claim for Van Meter. But Hamilton, by his answer in this suit, says that he bought that claim to protect his deed of trust, and he can, of course, hold the claim for no other purpose. Besides all this, W. S. Van Meter says he has been to Kentucky frequently since that settlement, and saw both George and A. L. Hamilton, and that he never asked them for the deed of trust, or for a conveyance of the Wall land, or for the balance of the alleged twenty-three hundred and seventy-four dollars which he says A. L. Hamilton agreed to pay him. Mr. Isaac C. Van Meter says, after he purchased the land in suit, he went to the defendant and offered to pay him all just claims owing by W. S. Van Meter, but that defendant referred him to his attorney. Indeed, all the undisputed circumstances in this case are against the theory of the case on which plaintiff prevailed in the circuit court.

There is one other circumstance on which the counsel for plaintiff placed much reliance. It appears that J. C. Hamilton, who is a brother of A. L. Hamilton, gave W. S. Van Meter an agreement dated in April, 1883, wherein reference is made to the lease, stating that Van Meter was to enclose the land with a hedge-fence, and pay taxes on same, and that Van Meter had surrendered the lease on condition that A. L. Hamilton should pay for improvements, and that Van Meter had paid to A. L. Hamilton twelve hundred and eighty dollars to make good his lease contract, and that Van Meter claimed that he had not been paid for the improvements. J. C. Hamilton then agrees, that if Van Meter will yield

up possession of the land, he will pay for the improvements upon the basis of the former settlement, in the event Van Meter has not been paid for them. This agreement seems to have been executed under these circumstances: J. C. Hamilton took possession of the land and Van Meter came to him with a shot-gun and ordered him off, claiming that he had not been paid for his improvements. The parties then had this paper prepared to settle their dispute. J. C. Hamilton says he desired to have a loose kind of paper drawn up to pacify Van Meter, and the remark is much criticised; but a loose kind of paper it is. It states this, however, that Van Meter had paid twelve hundred and eighty dollars to make good his contract of lease, which is inconsistent with the claim that the two thousand dollar note, of which the twelve hundred and eighty dollars is a part, was made for the purposes stated in the petition.

Before the grantor can set aside a deed of trust or enjoin a sale thereunder on the ground that the consideration has failed, or that it was without consideration, he must by his proof make out a case by a clear preponderance of the evidence. The rule applicable to such cases is often stated even in stronger language. *Worley v. Dryden*, 57 Mo. 226; *Forrester v. Moore*, 77 Mo. 651. The plaintiff here has made out no such a case. This case and that of the same plaintiff against A. L. Hamilton, which was a suit to cancel the deed of trust, were consolidated and tried together. The judgment in both cases is reversed and the cause remanded with directions to the trial court to enter up judgment in favor of the defendant, dismissing the petition for want of equity. Should all the parties desire to convert these proceedings into a bill to redeem, then that can be done, but the issues on the present pleading are now settled once for all.

Judgment reversed and cause remanded. RAY, J., absent; the other judges concur.