LUCIAN M. CHIPLEY, Respondent, v. SAMUEL H. LEATHE, Appellant.

St. Louis Court of Appeals, December 4, 1894.

1. **Instructions:** IGNORING EVIDENCE. An instruction which ignores material facts is erroneous.

2. **Real Estate Agent**: RIGHT TO COMMISSIONS. A real estate agent is entitled to his commissions for effecting a sale of property, when he secures a valid contract of purchase signed by a person who is able to specifically perform it, or is financially able to answer in damages in case he makes default.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Lubke & Muench* for appellant.

*Seneca N. Taylor* and *Chas. Erd* for respondent.

BIGGS, J.—This is an action by a real estate agent to recover commissions. The petition states that plaintiff was employed by the defendant to effect the sale of a lot on Washington avenue, in the city of St. Louis; that he was authorized to sell the property for $100,000, and was to receive the usual or customary commissions; that *on or about October 29, 1892*, he negotiated a sale of the property to W. S. Pope for the price named; that Pope *thereupon* executed a valid contract of purchase, and paid to defendant $5,000 earnest money; and that, by a subsequent arrangement between the defendant and Pope, the latter was released from the purchase and the earnest money forfeited to the defendant. The petition then avers that the usual and customary commission for the sale of real estate is two and one-half per cent. of the purchase price, which amount the defendant had refused to pay. The answer is a general denial.

On this appeal the defendant complains of the instructions, the action of the court in excluding evidence, and that the judgment is excessive.

It is conceded that plaintiff was employed to sell the lot for $100,000, and that, through his efforts,

Pope entered into negotiations for its purchase. It appears that the negotiations between the plaintiff and Pope in the first instance resulted in an agreement by Pope to purchase the property for $100,000, of which $25,000 were to be paid cash, and notes to be given for the balance. This contract was reduced to writing on October 27, 1892, and was signed by plaintiff and Pope. At the same time Pope delivered his check for $5,000, payable to the order of the defendant. It is admitted by both parties that this contract was abandoned, but they differ as to the attending facts and circumstances. The defendant's version is that the abandoned contract contained a material and unauthorized misstatement as to the condition of the buildings on the lot, and that, on account of this, Pope refused to carry out the trade, and demanded of the defendant a return of the check; that subsequently, at the suggestion of the plaintiff, the defendant and Pope entered into another contract, in which Pope agreed to exchange certain other property for the Washington avenue lot; that Pope's property was to be received at a valuation of $60,000, and he was to pay to plaintiff $40,000 the difference between the estimated values of the two pieces of property; that this new contract was reduced to writing and signed by defendant and Pope on October 29, and that it was agreed that the defendant should retain the check as so much paid on the new deal. The plaintiff testified, in substance, that the objectionable statement in the first contract was by the consent of Pope stricken out before the check was given; that he (defendant) knew of the cancellation of the first agreement and the substitution of the other, but he denied that he participated in the making of the second contract, or that he gave his consent to the cancellation of the first.

As to the compensation, the plaintiff's evidence tended to prove that, in the absence of a special contract, two and one-half per cent. of the valuation was the customary charge for selling real estate, whether the property was sold outright or exchanged for other property. One of his witnesses, however, testified that in a sale involving as much as $100,000 the commission would be two per cent. The defendant testified that, when the property was sold for money or its equivalent, the usual commission was two and one-half per cent. on the purchase money, but, when the property was merely exchanged for other real estate, the commission was computed on the difference in the valuations. It is undisputed that Pope refused to carry out the trade, and that the defendant could not compel performance, by reason of the fact that the title to the property, which he had agreed to convey, was vested in his wife and children. It is also conceded that subsequently Pope and the defendant adjusted the matter by Pope forfeiting the $5,000 which he had paid.

Under this proof the court, at the instance of the plaintiff, instructed the jury as follows:

1. "The court instructs the jury, that it is conceded by defendant that plaintiff was employed by him to find a purchaser for the Washington avenue property mentioned in the evidence. Now, if the jury believe from the evidence that plaintiff found such a purchaser who entered into a written contract for the purchase of the same on terms with provisions agreed to by defendant, and paid $5,000 on account of said purchase, and was able to respond in damages on account of declining to carry out said purchase, and that defendant thereafter without the consent of plaintiff for a valuable consideration released said purchaser, then the jury should find for plaintiff and against the defendant."

2. "The court instructs the jury that if, under the evidence and instructions of the court, they find for the plaintiff, then, in assessing his damages, they should allow him such sum as they believe from the evidence to have been the customary and reasonable commissions on the *price* at which the property mentioned in the evidence was agreed to be purchased by said Pope."

It is evident that, in the trial and submission of the cause, no attention was paid to the pleadings. The cause of action, as stated in the petition, is based on the last contract dated October 29, 1892, which provided for an exchange of property, whereas, the plaintiff in his testimony was permitted to predicate his right to recover commissions on the contract of October 27, which was essentially different in its terms. The plaintiff's instructions proceed upon the same theory, and the second instruction as to the measure of damages is especially objectionable and was prejudicial to the defendant, as it entirely ignores the defendant's evidence that, when a sale is for part cash and part property, the commission is computed on the cash part of the transaction. This of itself is sufficient to reverse the judgment.

The defendant asked the following instruction:

"Before a real estate broker is entitled to any commission, he must show to the satisfaction of the jury that the purchaser he has found is both *willing and able to buy the property*. If, therefore, the jury from all the evidence and circumstances shown in evidence do not believe that Maj. Pope was willing or able to buy the property under either of the contracts read in evidence, then the jury should find for defendant, notwithstanding the jury may also believe that Maj. Pope afterwards agreed to and did forfeit to plaintiff the $5,000 earnest money."

The court, against the objections of the defendant, changed and modified the instruction so as to make it

read as follows: "Before a real estate broker is entitled to any commissions, he must show to the satisfaction of the jury that the purchaser he has found *is financially able* to buy the property. If, therefore, the jury, from all the evidence and circumstances shown in evidence, do not believe that Maj. Pope was financially able to buy the property under either of the contracts read in evidence, then the jury should find for defendant, notwithstanding the jury may also believe that Maj. Pope afterwards did release and give up to plaintiff the $5,000 earnest money."

In the consideration of this instruction, either as asked or modified, we encounter the same false theory upon which the case was tried; for the instruction assumes that there could be a recovery under either contract. But applying the instruction to the contract of October 29, the defendant insists that, to warrant a recovery, it must appear not only that Pope was able to pay the difference of $40,000, but also that he was able to have the title to the exchanged property vested in the defendant; in other words that the defendant was not liable for commissions, if Pope was unable to specifically perform his part of the agreement. This is an erroneous view. The law is, that a real estate agent is entitled to his commissions when he produces a purchaser, who is willing and able, and offers to make the purchase according to the terms of the employment, or when he secures a valid contract of purchase signed by a person who is able to specifically perform it, or is *financially able to answer in damages in case he should make default. Hayden v. Grillo*, 35 Mo. App. 647. We do not think that the defendant has any room for complaint, for the instruction as given is far more favorable to him than the law. It told the jury that the plaintiff was not entitled to his commissions, unless Pope was financially able to buy the property. If Pope

was financially able to respond in damages for a failure to perform the contract, the plaintiff is entitled to his commissions, for the reason that the defendant could have recovered from Pope, as an item of damages, the commissions which the plaintiff had earned, and for which the defendant is liable. *Hayden v. Grillo, supra.* It may be remarked, in this connection, that there was evidence tending to prove that Pope was a man of wealth. Aside from this, the defendant had $5,000 of his money, which he retained on the score of damages, and there is nothing in the record to show that this amount was not sufficient to compensate him for all damages arising out of the breach of the contract, including reasonable compensation to plaintiff for his services.

On the cross examination of one of the plaintiff's witnesses, who had testified as to the customary commission allowed to real estate agents, the court sustained an objection to the following question: "At what rate could a reputable agent have been obtained in the city of St. Louis in 1892 to sell property on Washington avenue involving as much as $100,000?" An answer to the question would have been a mere guess on the part of the witness, and therefore the court committed no error. But, aside from this, the witness on further cross-examination was permitted without objection to answer substantially the same question.

As the judgment must be reversed on account of error in the instructions, the alleged excess in the judgment becomes immaterial.

With the concurrence of the other judges, the judgment of the circuit court will be reversed and the cause remanded. It is so ordered.