GAGE et al., Appellants, v. MEARS, Interpleader, Respondent.

St. Louis Court of Appeals, April 26, 1904.

1. **FRAUDULENT CONVEYANCE: Evidence of Fraud.** Where the issue is whether a conveyance is fraudulent, fraud can not be inferred from the mere fact that the defendant was insolvent or financially embarrassed at the time of making the trade.

2. ———: **Instruction: Comment Upon Evidence.** On the trial of an interplea, in an attachment suit, where the interpleader claimed under a conveyance alleged to be fraudulent, an instruction which told the jury that, in determining whether the purchaser took with notice of the fraudulent purpose on the

part of the seller, they might take into consideration certain facts which tended to show bad faith, was erroneous, where there was other evidence, not taken into account in the instruction, tending to explain such facts as consistent with good faith; such instruction was further erroneous because it was a commentary on the evidence.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*Wilson Cramer* for appellants.

The court erred in refusing the second paragraph of defendants' instruction No. 2. All the facts therein enumerated are shown by the evidence, and being undisputed, should have been submitted to the jury by instruction as badges of fraud from which the legal inference of a fraudulent purpose on the part of the vendor and of knowledge or notice thereof by the vendee might be drawn. Bump on Frdl. Conv. (2 Ed.), p. 34; Dry Goods Co. v. Schooley, 66 Mo. App. 406; Van Raalte v. Harrington, 101 Mo. 602; Barrett v. Davis, 104 Mo. 549.

*John A. Hope* for respondent.

(1) There was no error in giving interpleader's instruction No. 3. It laid down the rule that financial embarrassment merely does not prevent a debtor from selling his property, which is law. Feder v. Abraham, 28 Mo. App. 454; Rupe v. Alkire, 77 Mo. 641; Daugherty v. Cooper, 77 Mo. 528. (2) The court did not err in striking out the second paragraph of defendant's instruction No. 2. It was an unwarranted comment on the evidence and singled out and gave undue prominence to certain particular things. In Forrester v. Moore, 77 Mo. 657, in which a conveyance was attacked as fraudulent the Supreme Court said it was improper to specify in

an instruction certain facts as badges of fraud. Stein-wender v. Creath, 44 Mo. App. 356; Bank v. Nichols, 43 Mo. App. 397; Noyes v. Cunningham, 51 Mo. App. 194.

BLAND, P. J.—This is the second appeal of this case. The facts as developed on the first trial are set out in the opinion of this court rendered at the March term, 1902, reported in 94 Mo. App. 307. The facts developed on the last trial are not materially different from the facts shown on the first trial, with this exception; B. A. Macke testified on the last trial but did not testify on the first trial. His evidence tends to explain the hurry in which the trade between Trawick and Mears was made and the reason it was made after night. His evidence in this regard is as follows:

"Sometime in the latter part of November, 1897, as well as I remember, Mears came to me; he knew my brother at Kennett was in the real estate business, and he owned a lot of wild land in this county—I was representing Mears, assisting him in selling his timbered land that he owned in this county. I had a blue print map with all his lands marked off on that map. A few days before the transaction occurred between Mears and Trawick I had a conversation with Trawick at his store, in which he told me he was going out of the mercantile business, and that he had a position with a wholesale grocery house; that he wanted to sell his stock of goods and go on the road. I think this conversation occurred perhaps before I undertook to assist Mears in selling his real estate. After having the conversation with Trawick—he told me at the time that he was on a trade with George Dorris, at that time I think bartender for Tim Dorris at Hayti. On the evening the trade was finally consummated that night I had accepted a position with my brother in the county clerk's office of Dunklin county, and had boxed my household goods and was preparing to ship them to Kennett, intending to leave

on the next morning's train, as his deputy had gone into the campaign and he wanted me to take the deputy-ship. I had gone to Trawick's after some nails, I think; and while there Trawick remarked that if he closed the deal on foot he thought he would leave Hayti about the same time I did. I asked about the deal he was undertaking to make; he told me that Dorris said he would buy the stock of goods that evening if he could raise the money and Dorris was then trying to raise the money he thought. I suggested that if he didn't make the trade with Dorris and Dorris didn't get the money that Mears had put his land in my hands to sell, and if he would as soon have land that he could make a deal with Mears. He says, 'You come back after while and I will let you know about it.' I finished packing my goods and billed them out to Kennett. When I got back to the store—that time of the year I judge it was five o'clock—Jones was clerking for him at the time and had gone to supper. I asked Trawick if he had seen his man yet; he said he had not. He says, 'George is still out and hasn't come in,' but for me to come back after supper and he would let me know definitely about the trade. In the meantime I went to Mears and told him the probability of making a trade and asked him how he would like to trade his land for the goods—I asked Mears to go and examine the stock of goods; I told him to go through the stock of goods and see what he would be willing to give for the stock of goods. He did so. I went to supper. and at Trawick's request came back to the store after supper. Mears was at his place of business. When I got back after supper Trawick told me he hadn't yet seen Dorris. He and I sat there quite a while and talked about the trade indefinitely. He insisted that I should wait a little longer and he would see Dorris. I waited until about 7:30 or 8 o'clock. He went to the saloon and came back and said he and Dorris would not trade; that Dorris had not raised the money; that he told me he

thought in all probability he would make the trade with Mears. I told Mears to go and look at the stock of goods; that I thought he could make a trade. In the meantime Trawick had gone out of his store to his supper I think, at least he was out some little while, and I still waited; finally he came back and claimed he would accept the proposition—he told me he would accept Trawick's land for his stock of goods. Then Jones and Trawick—first, by that time Mears had gone home; Mears was in the habit of going home very early; as well as I remember, in fact I never saw his store open an hour after supper while I was there. He had gone home and Trawick and I went down to his house. Trawick suggested that we wait until next morning. I explained to him that I was going away the next morning and if I could be of any assistance in preparing the deeds and consummating the trade I preferred closing it that night. He then suggested that we go and get Jones, and we went to his house; he came to the store and we talked the matter over. They agreed between themselves that the trade would go. Then it was suggested to get Gwinn to come and take the acknowledgment to the deed. I am not sure, but it occurs to me that while they were gone after Gwinn I drafted the deed myself, perhaps with the exception of inserting the name of the grantee. I am not positive that I did it while they were gone. I know I drafted the deed. I had a blue print map of all his lands and I got the description of the lands from that and inserted them in the deed. Whether or not I drafted it while they were gone after Gwinn, or immediately after Gwinn came, I am not positive, but I know I drafted the deed, except perhaps inserting the name of the grantee. I don't know if I did that.''

As on the former trial the verdict was for Mears, the interpleader.

We held when the case was here before that there was no reason to doubt that Trawick's purpose in disposing of his property was fraudulent. There is nothing in the abstracts of the evidence to change that opinion in respect to Trawick's motive, but in the light shed upon the transaction by the evidence of Mackey, we are not prepared to say as a matter of law, that Mears participated in the fraud of Trawick, although there is much in the case that tends to show his participation. But whether or not he did so, we think, was a question of fact for the jury to pass upon under all the evidence adduced at the trial, and if the issues were submitted under proper instructions, the judgment should be affirmed.

Appellant complains of error in the giving of one instruction for the respondent and in the refusal of one asked by appellant. The instruction given for respondent, of which appellant complains, reads as follows:

"3. You are instructed that a debtor is not deprived of his right to sell or dispose of his property by reason merely of insolvency or embarrassed financial condition, even though a sale or disposition thereof may hinder or delay his creditors."

Neither insolvency nor financial embarrassment constitutes a legal barrier to the right of the insolvent or embarrassed to trade, nor do they taint his commercial transactions with fraud. Rupe v. Alkire, 77 Mo. 641; Dougherty v. Cooper, Ib. 528; Feder v. Abrahams, 28 Mo. App. 454. It was not error, therefore, to instruct the jury, as was in substance done, that fraud could not be inferred from the mere fact that Trawick was insolvent or financially embarrassed at the time of making the trade with Mears.

Appellant asked the following instruction:

"2. The court further instructs the jury that it is not necessary for the attaching plaintiffs to prove by

direct and positive evidence that J. W. Mears, the interpleader, had knowledge or notice of any fraudulent purpose on the part of A. P. Trawick in making the transfer to hinder, delay or defraud his creditors, but if the jury shall be satisfied from the evidence that such fraudulent purpose on the part of Trawick did exist, and shall find from the facts and circumstances attending the transfer were such as naturally to put a person of ordinary caution upon inquiry which would lead to a knowledge of the truth, then the jury may infer that Mears had knowledge and notice of Trawick's purpose in making the transfer.

" [And in this connection the jury is instructed that, in determining this question of knowledge or notice, and the good or bad faith of the transaction, they may take into consideration the fact that the sale was in lump and that no inventory was taken, the haste with which it was made, the unusual hour and secrecy of the transaction, the fact that the deed to the land taken in exchange for the goods was made to the wife of A. P. Trawick, and not to him, and that A. P. Trawick immediately prior to the sale and transfer of the stock of goods had conveyed all of his real estate to his father, E. R. Trawick.]"

The court modified the instruction by striking out that part in brackets and gave it in its modified form. Appellant contends that the instruction should have been given as asked. The last clause of the instruction (stricken out) sets forth facts that were shown by the evidence and, if unexplained, would indicate that the trade was fraudulent and that both parties participated in the fraud. But respondent offered evidence tending to explain the reason for making the trade in haste and at an unusual hour, which explanation, if true, consists with good faith on his part. This evidence is left entirely out of view by the instruction and for this reason it was erroneous. State ex rel. v. Branch, 151 Mo. 622;

Stocker v. Green, 94 Mo. 280; Crews v. Lackland, 67 Mo. 619; Chipley v. Leathe, 60 Mo. App. 15; Mathews v. Railway, 63 Mo. App. 569. The clause embraced in brackets is erroneous for another and further reason, to-wit, it is in the nature of a commentary on the evidence.

In Forrester v. Moore, 77 Mo. 651, the defendant prayed for an instruction (No. 12) which detailed facts in evidence that constituted badges of fraud. The trial court refused to give the instruction. In respect to the instruction, the court said: ''Principles of law and rules in practice, while they should have an unvarying character, and be as guideboards at all times, yet care must ever be vigilantly exercised to limit their proper application. They must be just so flexible as to recognize the reasonable differences in the legal status and qualities of cases as they arise. For instance, because in a given class of cases, and under peculiar phases of facts incident to them, it is permissible to array these facts in an instruction and declare to the jury the result which the law attaches to such facts when proven, counsel must not conclude that under the sanction of the language employed therein by the court license is given to indite legal essays or inject an argument to the jury in an instruction. Mathews v. St. Louis Grain Elevator Co., 59 Mo. 474. Lord COKE said: 'With respect to the question of law, the jury must not respond, but only the judges. So, or in like manner, or under like restrictions, the judge must not respond to questions of fact, but only the jury.' It is the recognition of this province of the jury that has so repeatedly and persistently induced our courts to pronounce against instructions commenting on the evidence, or singling out one or more facts of the case and directing the attention of the jury that way—and this for the reason that such instructions unduly influence from the bench the judgment of the jury, and tend to substitute for their estimation an

analysis of a given fact, the mental and moral bent of the judge. If this may be done in one case, it can in another, until the judge from the bench will invade the jury box and displace the twelve triers of the facts.''

The practice of singling out facts and giving them undue prominence, as was done by the last clause of the above instruction, has been uniformly condemned by the appellate courts of this State. State v. Homes, 17 Mo. 379; Chappell v. Allen, 38 Mo. 213; Bank v. Currie, 44 Mo. 91; State v. Jackson, 105 Mo. 196; State v. Hibler, 149 Mo. 478; State v. Rutherford, 152 Mo. 125; Weil v. Schwartz, 21 Mo. App. 372; Bank v. Nichols, 43 Mo. App. 385; Noyes, Norman & Co. v. Cunningham, 51 Mo. App. 194.

While we think there is abundant evidence from which the jury might have found that respondent participated in the fraud of Trawick, there is substantial evidence that he did not. Two juries having found that he did not participate in such fraud, and no reversible error appearing in the record, it is our duty to affirm the judgment.

Judgment affirmed. *Reyburn* and *Goode, JJ.,* concur.